No. 00-301

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 339

EUGENE PEDERSON, COLLEEN PEDERSON,

TERRY PEDERSON, DAVID WILBURN,

COLETTE WILBURN, GREG HAGENSTON,

and EVELYN HAGENSTON,

Plaintiffs and Appellants,

v.

DAWSON COUNTY, and BOARD OF COUNTY

COMMISSIONERS FOR DAWSON COUNTY, by

and through DOUGLAS E. BARONE, HAROLD

SKARTVED, and KATHLEEN A. ALLEY,

DAWSON COUNTY COMMISSIONERS,

Defendants and Respondents.

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Dawson,

The Honorable Richard A. Simonton, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Court E. Ball, Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P.,

Billings, Montana

For Respondents:

Jacque W. Best, Habedank & Best, Sidney, Montana

Submitted on Briefs: September 7, 2000
Decided: December 19, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiffs, Eugene Pederson, Colleen Pederson, and other owners of property accessed by Park View Loop and Park View Drive brought a complaint for a Declaratory Judgment in the District Court for the Seventh Judicial District in Dawson County in which they asked that the two roads be declared county roads. Following a nonjury trial, the District Court found that county roads had never been created. The Plaintiffs appeal. We affirm the judgment of the District Court.

¶2 The Appellants raise the following issues on appeal:

¶3 1. Did the District Court err by relying on § 60-1-201, MCA (1999), instead of the 1997 version of the statute?

¶4 2. Did the District Court err when it concluded that there was insufficient evidence to prove the creation of a county road?

## FACTUAL BACKGROUND

¶5 Eugene and Colleen Pederson, two of the Plaintiffs, owned property in Dawson

County. In 1975, they decided to divide their land into several 20-acre tracts. To access this subdivision, the Pedersons needed roads built through the subdivision, connecting the various tracts to the county road known as Pederson Drive. In order to facilitate the building of these roads, Eugene Pederson dealt primarily with Alvin Mathison, a county commissioner assigned to Pederson's section of the county in his efforts to secure county cooperation.

¶6 A county construction crew built the road. However, Pederson was billed approximately $2300 for culverts and dirt work. On June 23, 1981, Pederson and his wife gave a right-of-way easement to the County. According to Pederson, the County requested an easement from them. This easement is the only document or writing recorded in Dawson County to indicate any agreement between the County and Pederson. Dawson County records do not show any sign that the two roads were dedicated, petitioned for, or accepted by Dawson County as county roads.

¶7 Until 1996, the County periodically maintained the roads, usually at the request of residents in the area. When Greg and Evelyn Hagenston, also parties to this lawsuit, moved into the subdivision, the County widened Park View Road and Park View Loop to enable them to move their house onto their property.

¶8 In 1995 Pederson began arguing with county maintenance workers about how to maintain the roads. Joe Foran, the county road foreman, met with Pederson and subsequently checked into the status of Park View Drive and Park View Loop. He learned that the roads were not recorded as county roads. The County, then, notified the Pedersons and the other homeowners in the subdivision that it was not responsible for maintaining these roads. This suit for declaratory judgment followed. Following trial, judgment was entered for the County.

## DISCUSSION

## ISSUE 1

¶9 Did the District Court err by relying on § 60-1-201, MCA (1999) instead of the 1997 version of the statute?

¶10 The Pedersons contend that the District Court erred when it relied on the 1999 version of § 60-1-201, MCA, instead of the 1997 version in effect when their complaint was filed.

The 1999 version of the statute provides that "[a]ll highways that are not designated, selected, or established by the commission or constructed or maintained by the department may be designated as county roads or city streets upon the acceptance of the county or city." The 1997 version does not include the words "upon the acceptance of the county or city." In the lower court's decision, the court found that this section "indicate[d] that some affirmative action by the County is required." Appellants contend that county action is unnecessary pursuant to the 1997 version.

¶11 We agree that the 1997 version of the statute applies to this case. However, no error by the district court is grounds for setting aside the judgment of the district court unless the error affects the substantial rights of the parties. We must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties. Rule 61, M.R. Civ.P. We conclude that this error was harmless.

¶12 Both the 1997 and the 1999 versions of § 60-1-201, MCA provide in subsection (3) that "[c]ounty roads are those opened established, constructed, maintained, changed, abandoned, or discontinued by a County in accordance with Title 7, Chapter 14." The District Court recognized that the controlling law was found in Title 7, chapter 14 when it stated that "[w]hile Title 60 (specifically 60-1-201, MCA) appears to possibly conflict with Title 7, Title 60 deals with state highway classifications and administration whereas Title 7 deals specifically with the creation of county roads." It is clear that the District Court did not rely on Title 60 for its conclusion that a county road had not been created and therefore, its mistaken reference to the 1999 version of § 60-1-201, MCA was harmless error.

## ISSUE 2

¶13 Did the District Court err when it concluded that there was insufficient evidence to prove the creation of a county road?

¶14 The Pedersons contend that the District Court misconstrued the evidence in concluding that insufficient evidence existed to prove the existence of a county road. When we review a district court's findings of fact, the standard of review is whether those findings are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. When we review a district court's conclusions of law, the standard of review is whether those conclusions are correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶15 The District Court found that on June 23, 1981, Pedersons granted an easement to Dawson County which was subsequently recorded by the County. No other document or writing recorded in Dawson County was offered which would indicate that the two roads were dedicated, petitioned for, or ever accepted by Dawson County as county roads. Furthermore, undisputed testimony showed that there was no resolution or even an unrecorded agreement by the majority of the Dawson County Commissioners accepting Park View Loop and Park View Drive as county roads.

¶16 Prior to 1996, Pederson failed to make any claim that these roads were county roads. He did testify at trial that Alvin Matheson indicated to him that they were county roads. However, no other evidence substantiates this testimony. In Mathison's own deposition, Mathison claimed that he did not recall anything officially being done for the roads. Furthermore, Robert (Tubby) Ziegler, a commissioner from 1981-93, stated that the two roads were never considered county roads. He testified that the board would be required to vote on them before they could become county roads. A vote on these roads never occurred. The current commissioners have also taken the position that Park View Loop and Park View Drive are not county roads. After reviewing county records, they could not find any indication that these roads were accepted in any fashion as county roads.

¶17 The District Court also concluded that county roads can only be created pursuant to Title 7, Chapter 14, that there has been no substantial compliance with the statutory process, and that there is no evidence of intent by the County to create a county road as appears to be necessary from our decisions in *Reid v. Park County* (1981), 192 Mont 231, 627 P.2d 1210 and *Sheldon v. Flathead County* (1985), 218 Mont 270, 707 P.2d 540.

¶18 The Pedersons contend that because the County constructed the roads, maintained the roads, and accepted a right-of-way easement for the roads, its actions are tantamount to acceptance of the roads as county roads.

¶19 The record, however, also reflects that as an inducement to complete the roads, Pederson indicated that he would pay for their construction and did pay for part of the road work and culverts. The roads were occasionally maintained at the request of residents but it was the custom of county officials to do so when asked without regard to the official designation of the road. Furthermore, although the process has been expanded by amendments in 1999, Title 7, Chapter 14 in its 1997 form simply did not allow for the creation of county roads in the manner suggested by the Plaintiffs.

¶20 Section 7-14-2107, MCA (1997) authorized boards of county commissioners to acquire right-of-way for county roads. Section 7-14-2108, MCA (1997) provided that instruments which transfer a right-of-way must be filed with the county clerk. These sections described the process for acquiring and recording the right-of-way easement before a county road is created. However, only §§7-14-2601 to -2606, MCA (1997) referred to the process for the creation of county roads. Section 7-14-2601 provided for the creation of county roads pursuant to petition by a majority of the freeholders of a road district. Section 7-14-2603, MCA, then required an affirmative decision by the board of county commissioners before the county road was established. Once the board of commissioners agreed to create a county road, the board was required to immediately open the road and declare it to be a county road. Section 7-14-2605, MCA (1997). Implicit in all of Title 7, Chapter 14 as well as our prior decisions is that county roads cannot be created without the county's intent, expressed through its board of commissioners, to do so.

¶21 In *Peasley v. Trosper* (1936), 103 Mont. 401, 64 P.2d 109, even though the superintendent of Indian lands in Montana signed a consent form to create a public road, the court held that the statutory procedures must still be followed. The court found that "the road had never been laid out or opened . . . in conformity with the laws of the State of Montana." *Peasley,* 103 at 410, 64 P.2d at 112. Therefore, we held that the road in question was not a public road.

¶22 We conclude that the Pedersons offered no evidence that the statutory requirements for the creation of a county road were followed. According to the record, no petition was ever filed, no public hearing was held, and no evidence of a board resolution regarding the roads exists.

¶23 Furthermore, a public easement is not the equivalent of a county road. An easement is a nonpossessory interest in land. *Kuhlman v. Rivera* (1985), 216 Mont. 353, 358, 701 P.2d 982, 985. Regardless of whether Pederson believed a right-of-way easement was sufficient to create a county road, the easements grants only the right to use. *Bolinger v. City of Bozeman* (1972), 158 Mont 507, 511, 493 P.2d 1062, 1064. Nor have the Pedersons cited authority for the conclusion that a right-of-way easement creates a county road. We conclude, therefore, that the District Court did not err when it concluded that the facts in this case were insufficient to establish creation of a county road.

¶24 The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART