No. 02-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 227

GLENN GARRISON,

       Plaintiff and Appellant,

       v.

LINCOLN COUNTY,

       Defendant and Respondent.

APPEAL FROM:    District Court of the  Nineteenth Judicial District,
                    In and for the County of Lincoln, Cause No. DV-01-18
                    The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Christian J. Nygren, Milodragovich, Dale, Steinbrenner & Binney, Missoula, Montana

       For Respondent:

              Scott B. Spencer, Libby, Montana

Submitted on Briefs:  September 26, 2002

Decided:  August 25, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Appellant Glenn Garrison (Garrison) brought an action against Lincoln County in the Nineteenth Judicial District Court, Lincoln County, alleging that the county had no right or interest in a road that crosses his property. Upon conclusion of a bench trial, the District Court held that the road is a county road. The court held alternatively that, even if the road was not a county road, the public had obtained a prescriptive easement covering the road. Garrison appeals. We affirm.

## ISSUES

¶2     We restate the issues on appeal as follows:

1. Did the District Court err in concluding there was substantial compliance with Montana law for establishing the Iron Creek-Callahan Road as a county road?

2. Did the District Court err in concluding that this road was a county road even though it may not have been the same road contemplated by the Lincoln County Commissioners in 1912?

3. Did the District Court err in concluding there was a prescriptive easement?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Glenn Garrison owns several parcels of real property in Lincoln County that border the Iron Creek-Callahan Road ("Road"). Garrison also received a deed from his grandmother for a 60-foot strip of land over which approximately three acres of the Road pass. The dispute before us revolves around ownership of this segment of the Road.

¶4 Over ninety years ago, in May 1912, a document titled "Road Petition 52" was filed with the Lincoln County Clerk and Recorder's Office. The purpose of the petition was to establish the Iron Creek-Callahan Road as a public road. In June 1912, a public hearing was held on Road Petition 52. Pursuant to the statute then in effect, the Lincoln County Commissioners ordered a group to view and lay out the Road. The viewers inspected the Road and submitted their reports. On December 9, 1913, the county commissioners entered an order opening the Road and declaring it to be a county road.

¶5 However, as the District Court noted, the description of the road in the viewers' reports does not precisely match the description contained on the road petition, nor does it match the road as it actually exists. There is, though, evidence to suggest that Iron Creek-Callahan Road is the road referred to in Road Petition 52. For example, Road Petition 52 refers to a Mr. Allen owning land that the Road was to cross; George Allen owned the property to which the Garrisons were successors.

¶6 In approximately 1956, Garrison's grandparents purchased a parcel of land which the Iron Creek-Callahan Road crossed. Over the years, the original Garrison family property was divided into numerous parcels, many of which were conveyed to family members, including Garrison. In 1993, Garrison's grandmother executed a Quitclaim Deed to Garrison, purporting to deed to him the portion of the Road that passes through Garrison property. The 60-foot strip of land in question amounts to 2.985 acres. Garrison claims ownership of this section of the Road by virtue of the deed from his grandmother.

¶7 Lincoln County, on the other hand, presents a laundry list of factors to support its contention that the Road is a county--or public--road. Among other things, it is undisputed that speed limit signs are posted along Iron Creek-Callahan Road. A stop sign and other traffic control signs dot the Road. The county plows the Road in the winter, and fills potholes, cuts brush, and performs weed control in the summer. The county has been chip-sealing the Road for at least the past 20 years. A school bus route has traversed the Road since at least 1952. And the United States Postal Service also runs a route over Iron Creek-Callahan Road, delivering mail to residents. The public has used the Road since long before the Garrisons first purchased their property.

## STANDARD OF REVIEW

¶8 This Court reviews the findings of a district court sitting without a jury to determine if the court's findings are clearly erroneous. *Morton v. Lanier*, 2002 MT 214, ¶ 12, 311 Mont. 301, ¶ 12, 55 P.3d 380, ¶ 12. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Morton*, ¶ 12. Additionally, in determining whether the district court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Morton*, ¶ 12.

## DISCUSSION

**¶9 Did the District Court err in concluding there was substantial compliance with Montana law for establishing the Iron Creek-Callahan Road as a county road?**

4

¶10    Garrison argues that the failure of Lincoln County Commissioners--in 1912 and 1913 --to comply strictly with the statutory requirements for creating a public road render the Road that crosses his land private property.  He makes this argument despite the fact that the Road was declared public in 1913--long before his family bought the land in question--and has been used extensively by the public, and maintained by the county, for well over fifty years.  We find his arguments unpersuasive.

¶11    When the Iron Creek-Callahan Road was dedicated in 1913, the creation of county roads in Montana was governed by the Montana Civil Code of 1895.  In *Reid v. Park County* (1981), 192 Mont. 231, 627 P.2d 1210, which involved a public road created by the Park County Commissioners in 1905, we summarized the 1895 statutory requirements as follows:

> The pertinent road-creating statutes in effect in 1904 were sections 2750 through 2771, Civil Code 1895 (all of which were repealed in 1922). These statutes provide that ten freeholders can petition the county commissioner to establish a road described in the petition. The county commissioners then must appoint three persons to view the road and make recommendations on the need for and feasibility of building the proposed road.
>
> The statutes also provide for a hearing so the public could make its views known to the commissioners. If the commissioners decide in favor of a road, they order the road opened and order payment to the consenting landowners. In the case of nonconsenting landowners, they order payment after condemnation proceedings are completed. The statutes also require that either a written conveyance of the right-of-way be filed in the office of the county clerk and recorder or that a copy of the judgment be filed and recorded by the clerk in the event that the road is acquired by condemnation proceedings.

*Reid*, 192 Mont. at 234-35, 627 P.2d at 1212-13.

¶12    *Reid* also referenced § 32-103, RCM (1947), a curative statute that the district court relied on to declare the disputed road a public road.  That statute, which was in effect as §

2600 of the Political Code of 1895, remained on the books until it was repealed in 1959. It read as follows:

> All highways, roads, streets, alleys, courts, places, and bridges laid out or erected by the public, or now traveled or used by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such by the partition of real property, are public highways.

Section 32-103, RCM (1947) (quoted in *Reid*, 192 Mont. at 234, 627 P.2d at 1212).

¶13 In *Reid*, the disputed road had not been created in strict compliance with the 1895 statutes. In fact, the public record failed to establish that the county commissioners had ever acquired jurisdiction to create the road, as there was no proof that the required ten landowners ever petitioned for creation of the road. The record also failed to establish that the adjacent affected landowners received notice of the county's intention to create the road. Notwithstanding these procedural problems, we held that the disputed road was a county road. In so doing, we overruled two prior cases--*State v. Auchard* (1898), 22 Mont. 14, 55 P. 361, and *Warren v. Chouteau County* (1928), 82 Mont. 115, 265 P. 676--in which we had held that the county had the burden of proving that commissioners had jurisdiction to create the road before the curative statute (the former § 2600) could be applied.

¶14 In overruling *Auchard* and *Warren*, we noted the inherent difficulty of recreating events from incomplete or cryptic public records:

> *Auchard* was decided in 1898 and *Warren* in 1928. At those times, it was not an onerous duty to impose on a county that it show it had jurisdiction to create public roads on the face of the records. To presently adhere to the same requirement imposes an unrealistic burden on the public to prove on the face of the record that its public officials had jurisdiction to create a public road.

6

We went on to hold that "it is sufficient if the record taken as a whole shows that a public road was created." *Reid*, 192 Mont. at 234, 627 P.2d at 1212. "Otherwise," we said, "the burden on the public in a particular case to prove a public road was created so many years ago may well be unsurmountable." *Reid*, 192 Mont. at 236, 627 P.2d at 1213.

¶15    The District Court appropriately relied on *Reid* to conclude that the record in this case, taken as a whole, shows that a county road was created. As the court concluded, the record presents clear evidence that the requisite number of county residents petitioned for creation of the Road. A public hearing was held and the Road was dedicated. The Road has been maintained by the county for longer than anyone now living can remember, and it has been used by the public for that same period of time. Taken as a whole, the public record shows that a county road was created. Moreover, any defects in the procedure followed to create the public road are remedied by the curative statute--§ 2600 of the Political Code of 1895--that was in effect at the time Iron Creek-Callahan Road was made public.

¶16    Garrison tolls the warning bells, arguing that "an overbroad interpretation of the *Reid* decision" will render "the statutory guidelines for establishing county or public roads obsolete." He asserts, "*Reid* appears to say that these statutory requirements are insignificant as long as there is a general appearance that the road belongs to the county or the public." This is a clear misinterpretation of our decision in *Reid*. *Reid* considers roads that were created in 1898 (*Auchard*), 1896 (*Warren*), and 1905 (*Reid*). The holding is addressed to cases where there is a concern over the ability to rely on records that may be over 100 years old. The decision does not pave the way for modern day citizens to disregard currently

7

applicable statutes governing the creation of public roads. Rather, *Reid* provides a functional framework to apply to cases where a dispute arises about control of a road that was purportedly created when horse-and-buggies were more prevalent than Ford Explorers.

¶17 Even under the stricter standard in *Warren*, which we dispensed with in *Reid*, Garrison's claim would fail. As we noted in *Reid*, "*Warren* requires that the county commissioner proceedings show the required number of petitioners signed the petition and that each of them were freeholders" in order to apply the curative statute to any subsequent procedural defects in the creation of the road. *Reid*, 192 Mont. at 236, 627 P.2d at 1213. This showing could not be met in *Reid*. In the case before us, however, the record includes a copy of the original road petition, properly signed by ten freeholders. Garrison thus has no basis on which to argue that any procedural mistakes committed by Lincoln County back in 1912 would not be remedied, and the Road still deemed public, based on the curative statute, § 2600 of the Political Code of 1895.

¶18 Garrison also argues that *Reid* conflicts with our more recent case, *Pederson v. Dawson County*, 2000 MT 339, 303 Mont. 158, 17 P.3d 393, wherein the Pedersons sought a declaration from the court that two roads on their property were county roads. We concluded that "the Pedersons offered no evidence that the statutory requirements for the creation of a county road were followed. According to the record, no petition was ever filed, no public hearing was held, and no evidence of a board resolution regarding the road exists." *Pederson*, 2000 MT 339, ¶ 22, 303 Mont. 158, ¶ 22, 17 P.3d 393, ¶ 22.

¶19     Garrison contends that our holding in *Pederson* is contrary to the holding of *Reid*, which called for consideration not just of statutory compliance, but of the record as a whole. Again, Garrison ignores the context of *Reid*, which addressed disputes over roads created early in the last century, or before, and the uncertainty resulting from poorly documented or missing records of county action. *Pederson*, on the other hand, dealt with roads of recent origin, built at a time when one's compliance with statutory requisites was plainly required and easily determined. Thus, the two cases are readily reconcilable.

¶20     **Did the District Court err in concluding that this road was a county road even though it may not have been the same road contemplated by the Lincoln County Commissioners in 1912?**

¶21     While the District Court did find some inconsistencies among the path of the road described in Road Petition 52, the one described by the viewers, and the road as it exists today, we agree with the District Court's conclusion that "Discrepancies in the description or location of the road are not sufficient to turn this county road into private property." There is arguably compelling evidence in the record to indicate that the Road that exists today is the same one contemplated in Road Petition 52.

¶22     Further, application of the curative statute to this Road defeats Garrison's second challenge to its public status. As the statute requires, the Iron Creek-Callahan Road is "now traveled or used by the public" and was "laid out or erected by others" (the county). Thus, it is a "public highway." Section 32-103, RCM (1947). Accordingly, we hold that the District Court did not err in concluding that this Road is a county road, despite discrepancies in its description or location.

9

¶23    Having affirmed the District Court's determination that the Iron Creek-Callahan Road is a public road, we do not reach the question of whether the public has acquired a prescriptive easement.

## CONCLUSION

¶24    For the foregoing reasons, we affirm the judgment of the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE