DA 12-0340

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 45

ROBERT "BOB" SAYERS,

        Plaintiff and Appellant,

   v.

CHOUTEAU COUNTY, a political entity
of the State of Montana,

        Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twelfth Judicial District,<br>In and For the County of Chouteau, Cause No. DV 10-12<br>Honorable Kenneth R. Neill, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           Daniel E. Shannon, Shannon Legal Services, LLC; Great Falls, Montana

      For Appellee:

           Susan Brooks Swimley, Bozeman, Montana
           Tara Mae DePuy, Livingston, Montana

                       Submitted on Briefs: October 17, 2012
                              Decided: February 26, 2013

Filed:

                       _____
                             Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Robert "Bob" Sayers (Sayers) appeals an order of the Twelfth Judicial District Court, Chouteau County, that granted summary judgment to Chouteau County (County) on Sayers's claim seeking declaratory relief regarding whether the entire length of Lippard Road constituted a public roadway. We affirm.

¶2 We address the following issues on appeal:

¶3 *Whether the District Court properly applied the standard set forth in Reid v. Park County to the question of whether Lippard Road constituted a public roadway?*

¶4 *Whether the District Court properly determined that the entire length of Lippard Road constitutes a public roadway?*

## FACTS

¶5 Sayers owns approximately 5,400 contiguous acres of mostly undeveloped farmland in Chouteau County. Most of Sayers's property is located in Township 26 North, Range 10 East. A portion of Sayers's property, including his residence, is located within Township 25 North, Range 10 E. Sayers purchased his property in 1992 from the Federal Land Bank.

¶6 Lippard Road starts on the northern section line in Section 20, Township 26 North, Range 10 East. The road physically terminates in Section 1, Township 25 North, Range 10 East. Sayers filed a complaint in 2010 that seeks a declaratory judgment regarding whether Lippard Road remains a county road past its intersection with Section 26 and 27 in Township 26 North, Range 10 East (Section 26 and 27 Intersection). The following diagram is not

2

included in the record, but it roughly represents the physical layout of Lippard Road according to the evidence included in the record.



¶7    It is unclear when and where the first county road through Sayers's land was established. The record contains an undated petition in support of establishing a "proposed

Lippard road." The petition is addressed to the "Honorable [B]oard of County Commissioners" and states, "We are Homesteaders near Lippard station. And would like the proposed Lippard Road opened up." Twelve self-identified "homesteaders near Lippard station," including Chas Lippard, a predecessor-in-interest to Sayers's property, signed the document. Chas Lippard's home was located in Section 1, Township 25 North, Range 10 East.

¶8 The parties submitted identical maps that depict a location marked as "Lippard" in Section 1, Township 25 North, Range 10 East. Section 1, Township 25 North, Range 10 East, lies south of the Section 26 and 27 Intersection. The maps locate "Lippard" south of railroad tracks found in Section 1, Township 25 North, Range 10 East. The maps depict a Lippard Road that travels to Lippard.

¶9 The parties appear to agree regarding the location of the point on the maps labeled "Lippard." The parties dispute, however, the meaning of the term "Lippard Station," as used in the undated petition and found in other pertinent documents. The parties further dispute how Lippard Station had been used by the public. The record remains unclear whether the Board of County Commissioners (Board) took any additional steps to pursue this petition.

¶10 Citizens filed another petition to establish "Lippard Road" as a county road on July 1, 1913 (1913 Petition). The 1913 Petition contains the following description:

> beginning at a point in the Marias and Big Sandy county road near the N[orth] W[est] cor[ner] of Sec[tion] 29, T[ownship] 26, N[orth], R[ange] 10 E[ast], running thence east, on section lines as nearly as practicable, about 2 3/4 miles, thence southeasternly following the present traveled road between two coulees about one mile to the section line between Sec[tions] 26 and 27.

4

The petition described this road section to be about 3 3/4 miles long.

¶11    More than ten people signed the petition. The petition cites the fact that the road had been in use for 25 years as a basis for why the road was necessary for the convenience of public travel. The petition describes the proposed road joining and traveling, for at least part of the way, along a "present traveled road." The petition says nothing more about this "present traveled road." The record fails to inform whether this "present traveled road" was the road established by the earlier undated petition signed by Chas Lippard and others.

¶12    The Board immediately appointed three "Road Viewers" on July 1, 1913. The record contains an oath of office signed by two of the viewers. One viewer signed the oath on August 11, 1913, and the other signed it on August 27, 1913. One part of this viewer's report mirrors the description of the proposed road contained in the 1913 Petition.

¶13    The description in the viewer's report extends beyond the route outlined in the 1913 Petition. The viewer's report extends the 1913 road description to add "a road beginning at the N[orth] W[est] cor[ner] of Sec[tion] 21, thence east on section line two miles, thence south ½ mile. All in T[ownship] 26 N[orth], R[ange] 10 E[ast]." The viewer's report further details the fact that the road joins "the old road to Lippard." The 1913 petition simply describes the fact that the proposed route includes some part of the "present traveled road."

¶14    Two viewers signed the Viewer's Report for County Road on August 27, 1913. The viewers attested that the proposed road would result in a public convenience and recommended that the Board grant the petition. The viewer's report describes the road as

5

being 6 1/2 miles long. The report contains typed form language. One section of this typed form language provides that "[t]he said Viewers believe that they have laid out the proposed highway over the most practicable route, and that the said highway is necessary for the accommodation of the people in passing to and from_____." "Lippard" is handwritten in the blank line. The Board accepted the viewer's report on June 5, 1914. The Board declared and ordered the road open to the public. The Board further directed the county surveyor to survey and plat the road and to file the result with the county clerk and recorder.

¶15    The County Road Supervisor signed a document on July 18, 1914, in which he attested that he had posted three public notices of the opening of a county road. The document explains that the notices detailed, in part,

> a road beginning at the N[orth] W[est] cor[ner] of Sec[tion] 21, thence east on sec[tion] line 2 miles, then south 1/2 miles. With amendment that road be extended over most practicable route from sec[tion] line between Sec[tions] 26 and 27 to[]

The typed text on the document ends there and the original omits any punctuation after the word "to."

¶16    A handwritten note on the cover of the viewer's report describes a road that differs both from the 1913 Petition and from the viewer's report. Handwriting on the top half of the cover states, "[w]ith amendment that road be extended over the most practicable route from Sec[tion] line between Sec[tions] 26 and 27 to Lippard Station." A stamp on this amendment provides that the Board accepted the road viewer's report on June 5, 1914. The

6

stamp contains a space for the signature of the Board chair that the Chairman signed. A handwritten statement below the stamps directs the reader to "[s]ee minute entry of January 5, 1916."

¶17 A handwritten line separates the cover's top and bottom halves. The bottom half contains more handwritten notes that discuss an amendment to the proposed route and the abandonment of a section of Lippard Road not relevant to the present dispute. The handwritten notes reflect the fact that the Board considered the matter on September 7, 1916. The handwritten note further orders that the road be open to the public, surveyed, and platted, and that resulting plat and field notes be filed with the clerk and recorder. The chair of the Board then signed the handwritten note on the bottom half of the cover. Minutes from the Board meetings and other documentation suggests that the Board approved the proposed amendment to the route and the abandonment of a portion of the existing road. It further appears that additional changes to the portion of Lippard Road before the Section 26 and 27 Intersection occurred over the ensuing years.

¶18 A map created by the county surveyor through surveys conducted in 1915 and 1918 depicts a road that continues past the Section 26 and 27 Intersection to an endpoint in Section 1, Township 25 North, Range 10 East. The county surveyor verified that the map and field notes correctly represented the Lippard Road as he surveyed them. The surveyor filed the map with the clerk and recorder on January 4, 1919.

¶19 The County presented two witnesses who testified that the public had used Lippard Road as a public road past the Section 26 and 27 Intersection. Elvin Roberts (Roberts)

7

testified that as a county employee he had maintained Lippard Road past the Section 26 and 27 Intersection to a point located in Section 1, Township 25 North, Range 10 East. Jim Cornell (Cornell) testified that he saw people use the road at will to access the Missouri River at points past the Section 26 and 27 Intersection.

¶20 The District Court applied the analysis developed in *Reid v. Park Co.*, 192 Mont. 231, 235-36, 627 P.2d 1210, 1212 (1981), to its consideration of whether the record taken as a whole tended to suggest that the entire length of Lippard Road had been established as a county road. The District Court determined that the record tended to suggest that Lippard Road had been established as a county road from the junction with Highway 87 to the railroad right-of-way in Section 1, Township 25 North, Range 10 East. Sayers appeals.

## STANDARD OF REVIEW

¶21 We review de novo a district court's ruling on a summary judgment motion. *State v. Butte-Silver Bow Co.*, 2009 MT 414, ¶ 17, 353 Mont. 497, 220 P.3d 1115. We apply the same standards used by the district court under M. R. Civ. P. 56(c). *Butte-Silver Bow*, ¶ 17.

## DISCUSSION

¶22 *Whether the District Court properly applied the standard set forth in Reid to the question of whether Lippard Road constituted a public roadway?*

¶23 Sayers does not contest that Lippard Road constitutes a public road from its junction with Highway 87 to the point where the road crosses the section line that separates Sections 26 and 27 in Township 26 North, Range 10 East (hereinafter we refer to this section of

8

Lippard Road as the "Uncontested Section"). Sayers argues, however, that the public portion of the road ends at the intersection of the section line that separates Sections 26 and 27. The County asserts that the District Court properly determined that Lippard Road remains a public road as it continues past the Section 26 and 27 Intersection to where it meets a railroad right-of-way in Section 2, Township 25 North, Range 10 East (hereinafter we refer to this section of Lippard Road as the "Contested Section").

¶24 Sayers challenges the District Court's application of the analysis in *Reid* to Sayers's claim. Sayers argues that a complete public record exists regarding the establishment of the Uncontested Section of Lippard Road. Sayers suggests that the District Court should have limited its review of information to the "four corners" of the complete public record. Sayers contends that the entirety of Lippard Road came into being at one point in time, and, therefore, the District Court improperly relied upon the *Reid* analysis to reach its conclusion that the Contested Section of Lippard Road constitutes a public road.

¶25 The statutory methods to establish a county road by petition remained essentially the same from at least 1895 to 1922. *Reid*, 192 Mont. at 234-235, 627 P.2d at 1212. To establish a county road by petition required, in part: (1) submission of a petition by landowners; (2) appointment of road viewers; and (3) a notice of the road's opening. *Galassi v. Lincoln Co. Bd. of Comm'rs*, 2003 MT 319, ¶ 13, 318 Mont. 288, 80 P.3d 84; § 1390 – 1410, RCM (1907 Political Code); § 1390-1403, RCM (1907 Political Code). A county could establish a county road by petition when citizens submitted a signed petition to

9

establish a county road and the county accepted the petition. *Warren v. Chouteau Co.*, 82 Mont. 115, 124-125, 265 P. 676, 680 (1928) (overruled on other grounds).

¶26 We recognized in *Reid* that strict compliance with the jurisdictional requirements to establish a road by petition would pose an unjustifiable burden on the public to prove a public road created nearly 100 years earlier. *Reid*, 192 Mont. at 234, 627 P.2d at 1212. We instead determined that a court should evaluate "the record taken as a whole" to determine whether a public road had been created. *Reid*, 192 Mont. at 234, 627 P.2d at 1212. Sayers argues that the presence of a "complete record" here obviates any need for the Court to look to *Reid*.

¶27 Sayers cites our decision in *Garrison v. Lincoln Co.*, 2003 MT 227, 317 Mont. 190, 77 P.3d 163, to support his claim. We acknowledged in *Garrison* that the principles of *Reid* apply to "cases where a dispute arises about control of a road that was purportedly created when horse-and-buggies were more prevalent than Ford Explorers." *Garrison*, ¶ 16. The *Reid* analysis applies to cases involving "disputes over roads created early in the last century, or before," and cases where there is "uncertainty resulting from poorly documented or missing records of county action." *Garrison*, ¶ 19. The Court rejected concerns that an overbroad application of the *Reid* analysis would render obsolete the statutory guidelines to establish a county or public road. *Garrison*, ¶ 16.

¶28 The *Reid* analysis applies here. The parties dispute whether the County validly had extended the Contested Section of Lippard Road as a public road in the 1910s. The County extended part of the Uncontested Section of Lippard Road in the 1930s in order to attach

10

Lippard Road to Highway 87. The *Reid* analysis applies to the time period in which the Contested Section and the Uncontested Section of Lippard Road were established, in the 1910s and 1930s, respectively. *Garrison*, ¶ 16. The District Court properly viewed the record as a whole, pursuant to the principles of *Reid*, to determine whether the County had established a public road.

¶29 *Whether the District Court properly determined that the entire length of Lippard Road constitutes a public roadway?*

¶30 The District Court pointed to a variety of factors to support its determination that the public record evidenced that Lippard Road extended past the Section 26 and 27 Intersection. Several petitioners, including Chas Lippard—one of Sayers's predecessor in interest to the lands in question—wrote a letter to the Board in which they identified themselves as homesteaders near "Lippard Station." The petitioners requested that Lippard Road be "opened up." A handwritten statement on the cover to the viewer's report provides "[w]ith amendment that road be extended over the most practicable route from section line between Sec[tions] 26 and 27 to Lippard Station."

¶31 The county surveyor posted three original public notices to inform the public of the opening of Lippard Road. The public notice details "a road beginning at the N[orth] W[est] cor[ner] of Sec[tion] 21, thence east on sec[tion] line 2 miles, then south 1/2 miles." The surveyor's road description tracks the handwritten amendment to the originally proposed route. This amendment extended the road past the Section 26 and 27 Intersection: "[w]ith

11

amendment that road be extended over most practicable route from Sec[tion] line between Sec[tions] 26 and 27 to[]"

¶32    The typed text contains no punctuation at the end of the quoted language. The typed text, with the abrupt ending after the word "to," suggests that the road description continued. The District Court interpreted the typed text, along with the omitted final portion, to suggest that the County intended for the road to continue to a point somewhere past the Section 26 and 27 Intersection. To support this interpretation, the District Court relied upon a map submitted by both parties that depicts Lippard next to the Great Northern Railway. Other documents reference a road that extends to Lippard and Lippard Station. The District Court further relied upon the 1919 survey that depicts a road that continues to within 50 feet of a railroad right-of-way located past the Section 26 and 27 Intersection. A separate railroad map depicts a right-of-way that parallels the tracks more than fifty feet out from the center of the middle of the tracks. This evidence supports the District Court's determination that the County established Lippard Road as a public road past the Section 26 and 27 Intersection. *Reid*, 192 Mont. at 235-36, 607 P.2d at 1212.

¶33    Sayers next argues that the District Court improperly resolved conflicting evidence when it determined on summary judgment that "Lippard Station" served as a railroad or depot station. Sayers argues that our decision in *Prindel v. Ravalli Co.*, 2006 MT 62, ¶ 19, 331 Mont. 338, 133 P.3d 165, precludes a court from resolving disputed facts on summary judgment. The District Court noted that both parties "speculate[d]" and "bicker[ed]" over the meaning and the purpose that "Lippard Station" served.

12

¶34    The record suggests that Lippard Station and Lippard occupied the same geographic area.  Chas Lippard identifies himself as a homesteader near "Lippard Station."  Chas Lippard's home was in Section 1, Township 25 North, Range 10 East.  Sayers argues that the only buildings in the area sat in Section 1, Township 25 North, Range 10 East.  Sayers argues that people did not live on other parts of Chas Lippard's land.  Sayers offers no evidence, however, that Lippard Station would have been in a place other than the location of Lippard, as depicted on the various maps and surveys.

¶35    The actual historical use of Lippard Station matters less than its significance as the geographical point known as "Lippard Station."  Evidence in the record suggests the intent to continue Lippard Road past the Section 26 and 27 Intersection to the geographical location of "Lippard Station."  Sayers presents no specific evidence to dispute the geographical location of Lippard Station.  The record taken as a whole suggests that the County established Lippard Road as a public road to a geographical location depicted as Lippard Station.  *Reid*, 192 Mont. at 235-36, 627 P.2d at 1212.

¶36    Sayers argues alternatively that even if this Court agrees that Lippard Road extends past the Section 26 and 27 Intersection, the record contains no documentation to show that the road extended any closer than 50 feet from the railroad in Section 1, Township 25 North, Range 10 East.  He contends that the District Court wrongfully determined that Lippard Road intersects with the railroad right-of-way.  We disagree.

¶37    Sayers points to no specific facts in the record to dispute the survey that depicts the railroad-right-of-way in Section 1, Township 25, Range 10 East, as extending more than fifty

13

feet out from the center of the tracks. Sayers points to no specific facts in the record to dispute the maps that depict Lippard as a location past the intersection of the railroad right-of-way and Lippard Road. Sayers points to no specific facts in the record to dispute the testimony of Roberts or Cornell. Roberts testified by affidavit that he maintained the Lippard Road to a point past the railroad right-of-way. Cornell testified by affidavit that he and others traveled along Lippard Road past the railroad right-of-way to reach fishing spots on the Missouri River. Sayers failed to present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Apple Park, LLC. v. Apple Park Condos.*, 2008 MT 284, ¶ 11, 345 Mont. 359, 192 P.3d 232.

¶38 A county road, once established, will remain public unless formally abandoned. *State v. Fisher*, 2003 MT 207, ¶ 12, 317 Mont. 49, 75 P.3d 338. Abandonment requires an official act and extended nonuse is insufficient to establish a connection. *McCauley v. Thompson-Nistler*, 2000 MT 215, ¶ 31, 301 Mont. 81, 10 P.3d 794. Sayers sets forth no facts to suggest that the County abandoned any portion of the Contested Section of Lippard Road. The Contested Section of Lippard Road, having been established as a county road, remains a county road today.

¶39 Affirmed

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH

14

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE