FILED

10/03/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0573

DA 16-0573

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 241

CLAIMANT: Danreuther Ranches

OBJECTORS: Farmers Cooperative Canal Company;
Teton Cooperative Canal Company;
Eldorado Cooperative Canal Company;
United States of America (Bureau of Indian Affairs);
Danreuther Ranches

COUNTEROBJECTORS: Farmers Coop Canal Company.

APPEAL FROM:     Montana Water Court, Cause No. 41O-209
                 Honorable Douglas Ritter, Water Judge

COUNSEL OF RECORD:

      For Appellants:

           John E. Bloomquist, Abigail J. St. Lawrence, Bloomquist Law Firm P.C.,
           Helena, Montana

      For Appellee:

           Stephen R. Brown, Katelyn J. Hepburn, Garlington Lohn &
           Robinson, PLLP, Missoula, Montana

           Submitted on Briefs:  August 2, 2017

                Decided:  October 3, 2017

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1   This is an appeal from the Water Court's August 30, 2016 "Order Regarding Danreuther Ranches Water Right Claims."  We affirm in part and reverse in part.

¶2   We restate the issues on appeal as follows:

*Issue One (Canal Companies):   Whether the Water Court erred in its orders regarding Danreuther Claim Nos. 41O 156802-00; 41O 156804-00; 41O 156805-00; and implied Claim No. 30106965.*

*Issue Two (Danreuther cross-appeal):   Whether the Water Court erred in its orders regarding Danreuther Claim No. 41O 156804-00.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3   The following facts are taken from the Water Court's decision.  This appeal concerns certain water rights of the Danreuther Ranch, located along the Teton River north of Carter, Montana.  Lands in that area generally require irrigation to produce crops and the Teton River is the only reliable source of surface water with the exception of a spring in Captain Nelse's Coulee.  Danreuther Ranch raises crops, hay and livestock, and seeks to irrigate 182.8 acres north of the River and 69.7 acres south of the River.  The Ranch also claims stockwater from the River and from the Coulee spring.

¶4   The Danreuther Ranch was part of the Edward Reichelt ranch that began in 1888 with the acquisition of land and water rights along the Teton River.  In 1935 Edward divided his ranch between his two sons, Dan and Bruno, and Danreuther is the successor in interest to Dan.  Danreuther filed statements of claim in the water adjudication process, for irrigation and stockwater.  The claims are based upon an 1874 claim statement by

2

Nelson Vieux; notices of appropriation filed in 1914 by Horace Hibbard and Helen Hibbard; and a notice of appropriation filed in 1921 by Clara Lamphear.

¶5     Danreuther's most senior water claims are based upon activity beginning in 1874 by an early settler named Nelson Vieux, who came to the Fort Benton area in the 1860s and settled on land along the Teton River. Vieux's settlement was about 20 miles west of Fort Benton and became a regular second-night stop for freight wagons traveling the Whoop-Up Trail to Canada.[1] It was located at the mouth of the Nelse Coulee (named for Vieux) that provided the heavy freight wagons a passage out of the Teton River valley. The peak activity on the Trail was between 1874 and 1883, and the Water Court found that there was "significant development" at the Vieux ranch during this time. Vieux applied for a homestead in 1882.

¶6     On February 19, 1874, Vieux filed a written notice with Teton County stating that he intended to "claim and appropriate" water from the Teton River "for irrigating and agricultural purposes." He also claimed the right to float logs down the River to his settlement, unimpeded by any dams or obstructions upstream. The 1874 Vieux filing did not provide any other information about the intended use of water. According to Chouteau County tax records, Vieux did not claim any improvements on his land until 1881, but he paid taxes on "over 100 head of livestock every year." The Water Court found that the evidence did not support a conclusion that Vieux was irrigating crops until

---

[1] See the attached diagram of the Whoop-Up Trail. Vieux's settlement is labeled "Capt Nels' Leavings."

3

"the 1880s" and that there was no "compelling evidence" that Vieux was irrigating at an earlier date.

¶7 The Water Court found that the "best evidence" that Vieux was irrigating came in his May 7, 1887 homestead claim filing. Vieux stated that he moved his family to the Teton River land in 1880, when he "established a permanent residence, and took up farming." The 1887 filing states that Vieux farmed nine acres in 1880 and farmed 50 acres by 1887. The Water Court determined that since "cultivation in this area is pointless without irrigation," the evidence of cultivation is "a strong indication of irrigation." In addition, Vieux claimed ownership of farming equipment including plows, harrows, scythes, a rake and a mowing machine. The homestead claim filings also support ownership of 100 open range cattle and 60 open range horses, with four horses, three cows and some chickens and hogs "on the homestead." The Water Court found that this was consistent with the tax records showing that Vieux was keeping livestock and using the Teton River for their water source. Vieux received a homestead patent on 160 acres that is now part of the Danreuther Ranch.

¶8 The Water Court concluded that the preponderance of the evidence showed that Vieux appropriated stockwater from the Teton River and from a spring in Nelse's Coulee as early as 1874. The Water Court also concluded that the preponderance of the evidence showed that Vieux was irrigating nine acres by 1880; that he had increased that to 50

4

acres by 1887; and that these water appropriations were made on his settlement on the Teton River.[2]

¶9     The Water Court found that in 1888 Edward Reichelt acquired a homestead on the Teton River downstream from Nelson Vieux.  Reichelt developed his own water rights and acquired property and water rights from others including Vieux, Horace Hibbard, Helen Hibbard, and Clara Lamphear.  In 1904 Reichelt secured rights of way for ditches over neighboring lands and on January 25, 1905, he filed a notice of appropriation for 10 cubic feet of water per second (cfs) from the Teton River.  The "Reichelt Ditch" has since been the only ditch on the north side of the Teton River capable of carrying water from the River to Reichelt's various parcels of land.  Reichelt acquired the Vieux property and water rights by 1914.  He combined the Vieux rights with other rights and ran them through the Reichelt Ditch for irrigation.  By 1922 Reichelt acquired the Hibbard properties and water rights.

¶10     In 1935 Reichelt split his ranch between his sons Dan and Bruno.  Dan's upstream parcel later became the Danreuther Ranch after succession to his daughter Janet who married into the Danreuther family.  Danreuthers later filed statements of claim for the Vieux, Horace Hibbard (4 cfs) and Helen Hibbard (1 cfs) water rights for use on the upper ranch.  Bruno's part of the Reichelt Ranch is still in the Reichelt name, and it

---

[2] In 2009 Objector Farmers Co-op Canal sought summary judgment to invalidate Danreuther's Vieux-based claim.  The Water Court Master concluded that the 1874 Vieux filing was not a valid notice of appropriation and therefore could not support the claimed priority date.  The Water Court reviewed this decision and in 2013 concluded that the Vieux filing could be used to support the claimed priority date and that the burden of proof to support the contents of the Danreuther statement of claim had not shifted to the claimant.

claims water rights developed by Edward Reichelt. These Danreuther and Reichelt water rights are all distributed for irrigation through the Reichelt Ditch.

¶11 The Water Court reviewed the conflicting testimony by opposing experts concerning the amount of land that the Danreuthers irrigated through the Reichelt Ditch system. While much of the testimony was based upon analysis of aerial photographs from the 20th century, Danreuther's expert additionally conducted field examination of the ditches. Based upon the aerial information and the field inspection, Danreuther's expert determined that "182.80 acres is within the historical range of irrigation on the Danreuther property." The Water Court determined that the combination of aerial photograph survey with field examination of the sites was important and "provides additional credibility" to the conclusions. The Department of Natural Resources and Conservation (DNRC) review of Danreuther's claims also supported the conclusion that 182.80 acres were under irrigation. The western part of the ranch, including the Vieux homestead, is sprinkler irrigated from the Reichelt Ditch, while the eastern part is flood irrigated from the same source.

¶12 Danreuther's water claims for irrigation arising from this history are No. 41O 156804-00, based upon the 1874 filing and subsequent use by Nelson Vieux; and Nos. 41O 156805-00 and 41O 156806-00, based upon the 1914 notices of appropriation by Helen Hibbard and Horace Hibbard. All three claims specify the Teton River as their source and the Reichelt Ditch as the means of diversion. The statements of claim by Danreuther Ranches claimed a flow rate of 6.9 cfs and a place of use of 182.8 acres for

6

each of the three rights. The Water Court noted that the source for the claimed 6.9 cfs flow rate "is a mystery."

¶13 The Water Court carefully examined the available evidence on the Danreuther claim for the right to sprinkler irrigate 69.7 acres south of the Teton River based upon a 1921 notice of appropriation filed by Clara Lamphear. The evidence showed that there was little likelihood that the land covered by the Lamphear notice was ever irrigated because it is steep, broken and not irrigable. The evidence showed that Dan Danreuther developed his sprinkler system for the land south of the Teton River in 1972. This is Claim No. 41O 156807-00.

¶14 Danreuther Ranch also filed two claims for stock water use directly from the water source. Claim No. 41O 156801-00 was a use right for 201 animal units from a spring in Captain Nelse's Coulee with a priority date of 1870 (changed by rule to December 31, 1870). Claim No. 41O 156802-00 covers the right to use stockwater for 201 animal units from the Teton River based upon the 1874 filing by Nelson Vieux.

¶15 The Water Court also noted a stipulation entered between Danreuther and Reichelt to amend certain statements of claim. The stipulation provides that a portion of Danreuther's Claim No. 41O 156804-00 should be transferred to Reichelt so that the right to use 5.64 cfs to irrigate 149.4 acres remains with Danreuther, while 1.26 cfs goes to Reichelt to irrigate 33.4 acres. This stipulation resolved the issue of whether Danreuther's claim to 6.9 cfs from the Teton River was a single claim or was three separate claims for that amount of water. As a result, Danreuther's Claim Nos.

41O 156804-00, 41O 156805-00, and 41O 156806-00 represent claims to a total flow from the Teton River of 6.9 cfs.

¶16 The Water Court reached conclusions of law based upon these facts. The Court concluded that Danreuther's properly-filed statements of claim are prima facie evidence that the information in them is true, § 85-2-227(1), MCA. As a result, Objectors have the burden to show by a preponderance of the evidence that any challenged claim elements "do not accurately reflect the beneficial use of the water rights as they existed prior to July 1, 1973." *Weinheimer Ranch, Inc. v. Pospisil*, 2013 MT 87, ¶ 21, 369 Mont. 419, 299 P.3d 327. The Water Court generally upheld the water rights claimed in Danreuther's statements of claim, with modifications.

¶17 The Canal Companies (Farmers, Teton, and Eldorado) appeal and Danreuther cross-appeals.

## STANDARD OF REVIEW

¶18 This Court reviews the Water Court's findings of fact under the clearly erroneous standard. *Skelton Ranch v. Pondera County Canal & Reservoir Co.*, 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644. Under this standard a finding of fact may be clearly erroneous if it is not supported by substantial evidence; if the Water Court misapprehended the effect of the evidence; or if a review of the record demonstrates that a mistake has been made. *Skelton Ranch*, ¶ 27. "Substantial evidence" is evidence that a reasonable person would accept as adequate to support a conclusion, even if the evidence is weak or conflicting. *Skelton Ranch*, ¶ 27. This Court reviews the Water Court's conclusions of law to determine whether they are correct. *Skelton Ranch*, ¶ 26.

8

**DISCUSSION**

¶19    *Issue One (Canal companies):   Whether the Water Court erred in its orders regarding Danreuther Claim Nos. 41O 156802-00; 41O 156804-00; 41O 156805-00; and implied Claim No. 30106965.*

¶20    Danreuther Claim No. 41O 156804-00 represents a claim to the right to divert water from the Teton River for irrigation, based upon Nelson Vieux's 1874 filing with Chouteau County.   While the Water Court found sufficient evidence that Vieux was raising and watering stock by 1874, it found that there was insufficient evidence that Vieux was also irrigating crops by that time.   The Court noted that by 1888 Vieux had been on the property 20 years; established a freight station; farmed the homestead; and raised cows.   Based upon the declarations in Vieux's homestead claim filings, the Water Court concluded that Vieux was irrigating 9 acres of crops by 1880 and that he was irrigating an additional 41 acres by 1887.   Based upon this evidence of water use, and the fact that crops would not grow there without irrigation, the Water Court determined that Vieux had perfected those rights to irrigate out of the Teton River.

¶21    The Canal Objectors dispute the validity of the Water Court's decision, arguing that Vieux's 1874 filing with Chouteau County was insufficient to establish a water right. The Objectors correctly note that prior to 1885 the sole method for perfecting a water right was to actually put water to a beneficial use.   *Gilcrest v. Bowen*, 95 Mont. 44, 51, 24 P.2d 141, 144 (1933).   That is why the Water Court dated the priority of the two Vieux appropriations from the date of the first evidence of actual water use in 1880 and 1887. Those would have been the priority dates for these two rights whether or not the 1874 filing was ever made.

9

¶22 Objectors also point to the absence of evidence of when Vieux commenced his ditches; when he completed the ditches; the volume of water diverted; or the actual beneficial use of water. Certainly, the record would be clearer if it included precise information as to Captain Vieux's activities in the 1870s and 1880s. This Court has recognized that proof of precise facts as to persons' activities over one hundred years ago is often not possible, even where written records are kept. In cases where the existence of a public road is at issue, for example, we have examined the record as a whole rather than focusing on strict compliance with statutory requirements, recognizing that otherwise there would be an unjustifiable burden to prove the existence of a public road 100 years later. *Leticia Land Co. v. Anaconda-Deer Lodge County*, 2015 MT 323, ¶ 15, 381 Mont. 389, 362 P.3d 614; *Sayers v. Chouteau County*, 2013 MT 45, ¶ 26, 369 Mont. 98, 297 P.3d 312 (citing *Reid v. Park County*, 192 Mont. 231, 627 P.2d 1210 (1981)).

¶23 In this case, not only do we recognize the difficulty of proving precise facts and dates of activities that took place over 140 years ago, but also the express requirement noted above that the contents of a statement of claim are to be presumed true unless overcome by a preponderance of the evidence. Section 85-2-227(1), MCA; *Weinheimer Ranch,* ¶ 21. Here the objectors rely primarily upon an absence of evidence showing exactly what Vieux did and when he did it. However, the evidence that Vieux was cropping a precise number of acres in 1880 and in 1887, coupled with the unassailable fact that crops will not grow in that area without irrigation, firmly support the Water Court's conclusion regarding Claim No. 41O 156804-00. The Water Court properly

10

concluded that the Objectors failed to show by a preponderance of the evidence that the claim should be rejected.

¶24 Objectors have not demonstrated that the Water Court's findings or conclusions are clearly erroneous, or that the Court misapprehended the evidence, or that a clear mistake was made. To the contrary, the Water Court carefully noted and weighed the evidence to reach the decision and we find no error.

¶25 Danreuther Claim No. 41O 156802-00 is a right to water stock directly from the Teton River, based upon the claims and activities of Nelson Vieux. The Water Court determined that the evidence, particularly Vieux's declarations filed in support of his homestead entry, showed that he had a stockgrowing operation on the Teton River by 1874, and that the River was one of the few reliable water sources in the area. The Water Court further concluded that evidence of historical accounts of the Whoop-Up Trail, newspaper articles, tax records and homestead documents support Danreuther's statement of claim to the right to water 201 animal units from the Teton River. Vieux listed the precise number of animals kept at his homestead, along with additional animals that he allowed to openly graze. These stock numbers, plus the fact that the Teton River was the primary reliable source of stock water then, supported the Water Court's determination of the extent of this water right.

¶26 The Water Court concluded that the Objectors' arguments failed to overcome the statutory presumption in favor of the truth of the elements set out in Danreuther's statement of claim. On appeal, they again point to the absence of precise facts as to Vieux's stock numbers in the 1870s and of their watering habits, but this absence of

evidence does little to dilute the actual numbers supplied by the historical record cited by the Water Court.

¶27 Danreuther Claim No. 41O 156805-00 is a right to irrigate on 182.8 acres north of the Teton River based upon a September 8, 1914 notice of appropriation filed by Helen Hibbard. Danreuther initially claimed a flow rate of 6.9 cfs, but the Water Court reduced the claim to 1.0 cfs to match the appropriation claimed by Hibbard.

¶28 Canal Objectors contend that the Water Court should have rejected this claim because the lands that Hibbard originally listed as the place of use are now owned by the State of Montana, and because there is no evidence in the record that the Hibbard claim was ever transferred to Danreuther. The Water Court concluded from the evidence that Danreuther and predecessors had used the Helen Hibbard right along with other rights on the 182.8-acre parcel of land, and that this aspect of the right should remain as claimed. The Water Court reduced the flow rate to 1 cfs to reflect the original appropriation by Hibbard.

¶29 Danreuther points out that the issue concerning the chain of title to the Hibbard water right was not raised below and so there was no cause to present evidence on that point. In addition, the contents of the Danreuther claim are presumed true unless overcome by a preponderance of the evidence. Objectors have not demonstrated that the Water Court's findings or conclusions are clearly erroneous, or that the Court misapprehended the evidence or that a clear mistake was made. To the contrary, the Water Court carefully noted and weighed the evidence to reach the decision and we find no error.

¶30    *Issue Two (Danreuther cross-appeal): Whether the Water Court erred in its orders regarding Danreuther Claim No. 41O 156804-00.*

¶31    Danreuther cross-appeals from the Water Court's decisions regarding Claim No. 41O 156804-00, the right to irrigate from the Teton River based upon the original Vieux appropriations. The Water Court altered Danreuther's claim for a single irrigation right with an 1874 priority date, recognizing instead two separate rights dated 1880 and 1887. Danreuther argues it is entitled to the presumption of truth of the matters stated in the original statement of claim with an 1874 priority. In addition, Danreuther points to the evidence that Vieux was in fact irrigating by 1880 and argues that it is entitled to relate the irrigation right priority date back to 1874 when Vieux filed notice of his intent to appropriate.

¶32    The Water Court reviewed the history of the claim based upon the 1874 Vieux declaration of intent, concluding that at that time there was no statutory procedure for posting notice of appropriation of water. At that time, the law required that a claimant initiate work on a diversion of water and then complete the work in a reasonable amount of time. If so, then the claimant could date the water right from the time the work began on the diversion. *Gilcrest,* 95 Mont. at 51, 4 P.2d at 144. By contrast, the Water Court determined that Vieux's 1874 notice established only that he had an intention to use water at some time in the future.

¶33    The Water Court determined that while Danreuther's evidence did not show that Vieux irrigated in 1874, it supported a conclusion that he was irrigating by 1880. The Water Court found that there were no tax records or crop yields from 1874 and that

13

evidence of Vieux's involvement with the "Whoop-Up Trail is too speculative to have any credibility." The Water Court found that the most credible evidence of irrigation on the Vieux property came from his homestead filings, newspaper accounts from the time and the testimony of Dan Danreuther. The Water Court concluded that this evidence showed that Vieux was "cultivating land and harvesting crops by 1880" and that he "produced sufficient yields to indicate irrigation."

¶34 The Water Court determined that it was "more likely than not" that Vieux was irrigating 9 acres in 1880 and that he "brought an additional 41 acres under irrigation by 1887." The Water Court concluded that this evidence showing an increase in cropped acres between 1880 and 1887 supported an "implied" second water right, with the 1887 priority date. Danreuther contends that this was not a second separate appropriation, but rather that the evidence shows a continued development of the irrigation begun by at least 1880.

¶35 While Danreuther claimed a flow rate of 6.9 cfs, the Water Court also determined that there was "no evidence supporting a specific flow rate based on [Vieux's] historical use." The Water Court applied guidelines from the DNRC that establish a "17 gpm [gallon per minute] (1.5 miner's inches) flow rate per acre guideline to all use and filed rights." The Water Court noted that the DNRC did not reduce Danreuther's flow rate below the claimed 6.9 cfs because applying the DNRC guideline to 182.8 acres results in a flow rate of 17 gpm per acre. Nonetheless, the Water Court decided that Danreuther's claim should be measured by the 17 gpm per acre flow rate, as applied to the acreage of the two Vieux appropriations (1880 for 9 acres and 1887 for 41 acres). Under this

14

calculation the Water Court concluded that Danreuther was entitled to total Vieux rights of 850 gpm per acre, or 1.9 cfs. Danreuther objects to the Water Court's rejection of the claimed flow of 6.9 cfs.

¶36 The Water Court found that the evidence established that Edward Reichelt acquired Vieux's water rights, combined them with other rights, and used that water "throughout the irrigated portion of his property." When Reichelt split the ranch in 1935, his successors "continued to share the water rights to some extent." Subsequently, "Danreuther marshaled the rights it received from Edward on a total of 182.8 acres" and did so "well before 1973."

¶37 The Water Court concluded that prior to 1973 appropriators could change their point of diversion, or the place or purpose of use, as long as it did not harm other appropriators. At the same time, such a change could not increase the flow rate or total volume of water used. The Water Court found that while Danreuther's irrigation of 182.8 acres was a significant increase over Vieux's 50 acres, there was no evidence that Danreuther or its predecessors increased the diversion rate or total volume of water over that used by Vieux. Additionally, the irrigation of the 182.8 acres was assisted by the use of other rights in addition to the Vieux appropriations.

¶38 Therefore, the Water Court affirmed Danreuther's right to use the Vieux rights, along with other rights, to irrigate the 182.8 acres.[3]

---

[3] Because the flow rate of the Vieux right was decreased from 6.9 cfs to 1.9 cfs, the Water Court determined that the 2009 Danreuther-Reichelt stipulation dividing the 6.9 cfs should no longer be enforceable.

¶39    We agree with the Water Court's analysis of the evidence to conclude that the flow rate for Danreuther's irrigation right should be based upon the acres that Vieux irrigated beginning in 1880. As the Water Court concluded, there was no actual evidentiary support for a diversion rate of 6.9 cfs.

¶40    However, we find that the Water Court misapprehended the effect of the evidence showing that Vieux's irrigated acreage increased from 9 in 1880 to 50 in 1887. We agree with Danreuther that, considering all the circumstances, and recognizing the passage of time and the scant records, this increase actually represents evidence of Vieux's continued work to consummate the diversion he began by 1880.

¶41    Danreuther's Vieux-based claims are governed by the law in effect at the time of the appropriation. *Marks v. 71 Ranch*, 2014 MT 250, ¶ 15, 376 Mont. 340, 334 P.3d 373. When Vieux started irrigating in 1880, Montana had not yet adopted the subsequent (1885) statutes which allowed an appropriator to post and file a notice of appropriation and then complete the diversion and use of water. When an appropriator did so, the priority date of the right related back to the date the notice was posted. *Montana DNRC v. Intake Water Co.*, 171 Mont. 416, 430, 558 P.2d 1110, 1118 (1976).

¶42    Before 1885, however, the primary way to appropriate water was to put it to beneficial use. *Axtell v. M.S. Consulting*, 1998 MT 64, ¶ 26, 288 Mont. 150, 955 P.2d 1362. The law allowed an appropriator to commence work on the headgate and ditches, and upon completion of the system to relate the appropriation back to the date the appropriation work was actually commenced. *Gilcrest*, 95 Mont. at 51, 4 P.2d at 144. The question of whether an appropriator diligently worked on the means of diversion was

16

made on a case-by-case basis considering all the facts and circumstances of the situation. *Intake Water Co.*, 171 Mont. at 434, 558 P.2d at 1120.

¶43 We recognize that in this case Danreuther is entitled to the presumption that his properly-filed statements of claim are prima facie evidence that the information in them is true, § 85-2-227(1), MCA. *Weinheimer Ranch,* ¶ 21. We also recognize that the Objectors had the burden to prove by a preponderance of the evidence that this information in the claim is incorrect. *Teton Co-Op Canal Co. v. Teton Coop Reservoir Co.*, 2015 MT 344, ¶ 21, 382 Mont. 1, 365 P.3d. 442.

¶44 The Objectors did not prove, by a preponderance of the evidence, that Vieux made or intended to make two separate appropriations dated to 1880 and 1887. In fact, on appeal, the Objectors contend that Vieux never made any valid appropriation and that Danreuther's claim should be voided. While the Water Court construed the evidence as establishing two separate water rights (one an implied right), we conclude that the Water Court misapprehended the evidence and that in this water rights context it shows a continuation of the irrigation effort begun in 1880 and completed in 1887, with a single priority date in 1880.

¶45 Examining the record as a whole, we agree with Danreuther's argument of entitlement to a single irrigation right from the Teton River based upon Vieux's water use in the 1880s. This claim should have a priority date of 1880 when Vieux commenced the irrigation project, and should encompass water sufficient for irrigation on 50 acres. We therefore agree with the Water Court's determination as to the flow rate of 1.9 cfs provided by this right.

17

## CONCLUSION

¶46　The Water Court's decision is affirmed in part, reversed in part and remanded for further proceedings.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

