Regis O’Brien, J.
This is an action to compel the determination of claims pertaining to certain real property conveyed to the plaintiff by the defendant.
The trial was conducted before the court and a jury pursuant to the provisions of section 500 of the Real Property Law, but at the conclusion of the evidence, the jury was dismissed *668 because no issue of fact remained for it to determine. The court reserved decision on the undisputed questions of fact and questions of law.
The testimony revealed that the plaintiff acquired, by means of a quitclaim deed from the defendant, certain premises in the city of Buffalo which, by the description, included part of so-called Dorrance Avenue. The deed was recorded in the Erie County Clerk’s office on February 24, 1953 in Liber 5276 of Deeds at page 233.
The plaintiff claimed that under the wording of the description of the premises conveyed, he acquired title free and clear of any restrictions for street purposes, to the center line of so-called Dorrance Avenue, or the most southerly 50 feet of the lands as described.
The defendant denied such claim on the grounds that said strip of land was and is part of a public street 50 feet wide, in the city of Buffalo, known as Dorrance Avenue, and could not be and was not intended to be conveyed by said quitclaim deed to the plaintiff. Furthermore, the city claims that is was an oversight not to have expressly exempted said strip from the description in said quitclaim deed.
In respect to the claims of the parties, the testimony revealed, and I find and decide therefrom, that
(a) In the year 1925, the New York State Department of Public Works and the Erie County Highway Department commenced discussions relating to the proposed improvement and extension of highway facilities in Erie County, such improvements generally being referred to as the Greater Motorways System of Erie County, among which was the improvement known as McKinley Parkway Extension;
(b) It was proposed originally that said McKinley Parkway Extension be extended from the present circle of the city line along McKinley Parkway through Lackawanna. This proposal was abandoned, however, when it was realized that certain engineering problems would make the cost prohibitive. In order to avoid such costs it was decided to run said proposed extension upon and along Dorrance Avenue, the dividing line between the city of Buffalo and the city of Lackawanna;
(c) Following such decision, negotiations were commenced with the owners of a portion of land through which such proposed extension would be constructed, to ascertain if said owners would convey the southerly 50 feet of their land, in consideration of the proposed improvements by the county. They agreed and the portion of their lands to be conveyed was outlined in yellow on a survey attached to said agreement;
*669 (d) In 1927, the Legislature enacted chapter 156 of the Laws of 1927 which empowered the County of Erie and the City of Buffalo to make a contract in relation to said proposed construction and improvement;
(e) Subsequently and on February 4, 1929, the Council of the City of Buffalo was requested by the chief engineer of the Greater Motorways Systems of the County of Erie, to permit the county to extend McKinley Parkway from the circle, upon and along Dorrance Avenue and to construct a pavement thereon 40 feet wide for a distance of 1,700 feet, said pavement to be 20 feet wide in the city of Buffalo and 20 feet wide in the city of Lackawanna. The council granted such permission;
(f) Shortly thereafter a survey was made of the right of way to be acquired by the county for the construction of said improvement. It was called the McKinley Parkway Extension and was 100 feet in width, 50 feet of which was in Buffalo and 50 feet in Lackawanna;
(g) During the latter part of 1929, construction of said pavement was commenced. It was wholly constructed within said right of way of 100 feet, with 20 feet along the southerly boundary line of Buffalo and 20 feet along the northerly line of Lackawanna, or the center line of Dorrance Avenue;
(h) Ever since said highway was completed in 1930, it has been in open, notorious, continuous and uninterrupted use by the public;
(i) It was being so used on March 24, 1953, when the defendant by the said quitclaim deed heretofore mentioned, conveyed the premises involved in this action to the plaintiff;
(j) Subsequent to the time plaintiff received said quitclaim deed, he conveyed a portion of said premises and in the deed expressly exempted therefrom all rights of himself and the City of Buffalo in and to any portion of the described premises lying without the bounds of Dorrance Avenue;
(k) It appeared from the testimony that Dorrance Avenue, immediately to the west of the premises in question, was and is 50 feet wide in the city of Buffalo; also that it has been and is so designated on maps of the City of Buffalo for many years prior and subsequent to the date that plaintiff received his quitclaim deed. It also appeared that the zoning map for the year 1951 showed said Dorrance Avenue as being a public street, running from South Park Avenue to the town of West Seneca.
(l) in addition to the foregoing, ever since the street was opened to public use, the city maintained the area by plowing the snow in the wintertime and cleaning the road in the summer *670 time; also its police, in the performance of their regular duties, patrolled the area.
In view of the foregoing facts, the plaintiff’s contention that the quitclaim deed he received extinguished the rights of the public in and to Dorrance Avenue, as a street, must be rejected. Plaintiff contends that the city did not formally act to dedicate the southerly portion of land in question as a part of Dorrance Avenue and therefore said land is private property. The claim is not tenable. Use of the premises by the public since 1930 as a public street impressed it with the character of a public highway.
Section 189 of the Highway Law provides: ‘‘ All lands which shall be used by the public as a highway for the period of twenty years or more, shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway, and the town superintendent shall open all such highways for the width of at least three rods.” Under this section, no dedication is essential to a highway by use (1910 Atty. Gen. 709).
Under certain circumstances similar to the facts which I have found to exist in this case, a dedication may be effected Avithout deed or formal writing (Cook v. Harris, 61 N. Y. 448; Auslander v. Strain, 81 N. Y. S. 2d 425). “ The public highways and streets are acquired and held by the state in trust for the use of all the people. For ordinary and general transportation and traffic they are free and common to all citizens. Thus much is conclusively implied in their acquisition and maintenance, regardless of the estate or title by Avhich they are held ” (Bradley v. Degnon Contr. Co., 224 N. Y. 60, 67). Title to the streets is held for the public use (People ex rel. City of New York v. New York Rys. Co., 217 N. Y. 310).
While the width and extent of a highway established by prescription or use are generally measured by the actual use for road purposes, the easement is not necessarily limited to the beaten path or traveled tract. It carries with it the usual width of the highway in the locality or such width as is reasonably necessary for the safety and convenience of the traveling public and for ordinary repairs and improvements. A highway established by user includes the traveled tract and whatever land is necessarily used or is incidental thereto for highway purposes.
The street in question is one half in the city of Buffalo and the other one half in the city of Lackawanna. The area in question is a residential one, suitable for construction of homes. *671 The plaintiff wants to develop the lands he owns in the city of Buffalo into a substantial residential district.
Foot pedestrians attracted to the neighborhood will require a safe place to walk along the street. A street is a public thoroughfare. Generally, the term “ street ” includes sidewalks and a sidewalk constitutes a part of the street. The sidewalk is usually recognized as that portion of the street on each side thereof which has been arranged for foot pedestrians and is not intended for use by vehicles. Though it is devoted to the use of pedestrians, it is, nevertheless, a portion of the public highway.
The testimony showed, and I find and decide, that it was the intent that this highway be of a uniform width of 50 feet. This is further substantiated by the fact that Dorrance Avenue immediately adjacent and to the west from Hancock Street to Highview Avenue is 50 feet wide. That portion of Dorrance Avenue contains not only the 20-foot pavement to which reference has been made, but also has a sidewalk of the type last above mentioned for the convenience of the public and occupants of homes located thereon.
In view of the foregoing findings, the southerly 50 feet of the lands described in the quitclaim deed given to the plaintiff by the defendant as aforesaid, must be, and I hereby find and decide that they are, burdened with an easement for public street purposes.
I further find and decide that the defendant and the public are entitled to free and uninterrupted passage over such area, and that the plaintiff and every person claiming under him shall be, and hereby is, forever enjoined from obstructing or interfering with the free passage of the City of Buffalo and the public over said portion of Dorrance Avenue.
The foregoing constitutes my findings and decision pursuant to section 440 of the Civil Practice Act.