JUSTICE McKINNON,
dissenting in part and specially concurring in part.
¶83 I dissent from the Court’s decision as to Issues One through Three, regarding Seyler Lane and Seyler Bridge. In my view, the Court’s Opinion disregards more than a century of precedent governing prescriptive easements and undermines the balance the Legislature has struck between landowners and recreationists. As to Issue Five, I agree with the ultimate result the Court reaches regarding Lewis Lane and Lewis Bridge, but I do not agree with the Court’s reasoning. I thus specially concur as to that issue. [1]
*308 I. Width and Use of Public Right-of-Way at Seyler Lane and Seyler Bridge
¶84 At the outset, I believe the parties’ formulation of certain stipulated “facts” has hindered our ability to render a legally sound decision in this case. The Pretrial Order, which was signed by the trial judge and counsel for each party, lists numerous facts that “are admitted, agreed to be true, and require no proof.” The confusion arises from the parties’ stipulation that “Seyler Bridge and its approaches on Seyler Lane is a county road right-of-way that was established by prescriptive use.” Elsewhere in the Agreed Facts, the parties appear to have stipulated that Seyler Lane is a “public highway,” as defined by § 60-1- 103(22)(d), MCA-meaning that Seyler Lane was “acquired by adverse use by the public, with jurisdiction having been assumed by [Madison County].” The question arises, therefore, as to the significance of the parties’ separate characterization of Seyler Lane as “a county road right-of-way that was established by prescriptive use.” For the reasons which follow, I believe this characterization is inaccurate and that the Court errs by incorporating it into the analysis of Seyler Lane’s width.[2]
A. “County Roads” are not Established by Prescriptive Use
¶85 “Public highways” are classified as (a) federal-aid highways, (b) state highways, (c) county roads, and (d) city streets. Section 60-1-201(1), MCA. A “county road,” in turn, is defined as “any public highway opened, established, constructed, maintained, abandoned, or discontinued by a county in accordance with Title 7, chapter 14.” Section 60-1-103(7), MCA (emphasis added); see also § 60-1-201(3), MCA. This specific definition of “county road” controls over the general definition of “public highways.” Brookins v. Mote, 2012 MT 283, ¶ 28, 367 Mont. 193, 292 P.3d 347 (a specific statute controls over a general *309 provision to the extent of any inconsistency); accord § 1-2-102, MCA. ¶86 A “public highway” may be acquired by adverse (i.e., prescriptive) use by the public. Section 60-l-103(22)(d), MCA. The statutorily prescribed methods for acquiring a “county road,” in contrast, do not include “by prescriptive use.” Pursuant to Title 7, chapter 14, MCA, a “county road” may be established in any of the following ways (which are set forth in § 7-14-2101(2)(b) and (3), MCA):
1. petition by freeholders, approval by resolution, and opening by the board of county commissioners (see generally Title 7, chapter 14, part 26, MCA);
2. dedication for public use in the county and approval by resolution of the board of county commissioners;
3. acquisition by eminent domain pursuant to Title 70, chapter 30, MCA, and acceptance by resolution as a county road by the board of county commissioners;
4. an exchange with the State as provided in § 60-4-201, MCA;
5. recognition of a legal route by a district court pursuant to § 7-14-2622, MCA;
6. acceptance by resolution of the board of county commissioners, following a public hearing, of a road that has not previously been considered a county road but that has been laid out, constructed, and maintained with state or county funds; or
7. acceptance and approval by resolution of the board of county commissioners of a road that is abandoned by the State.
¶87 While a public highway may be acquired through prescriptive use by the public, a public highway is not a county road until the board of county commissioners formally approves it as a county road pursuant to the methods outlined above.[3] There is no evidence, and nothing stated in the parties’ Agreed Facts, that the Madison County Board of Commissioners approved Seyler Lane as a county road. Simply calling something a “county road” in the course of litigation-as the parties appear to have done here-does not make it one. “Implicit in all of Title 7, Chapter 14 as well as our prior decisions is that county roads cannot be created without the county’s intent, expressed through its *310 board of commissioners, to do so.” Pedersen v. Dawson Co., 2000 MT 339, ¶ 20, 303 Mont. 158, 17 P.3d 393 (emphasis added); see also Garrison v. Lincoln Co., 2003 MT 227, ¶ 16, 317 Mont. 190, 77 P.3d 163 (emphasizing that our caselaw “does not pave the way for modern day citizens to disregard currently applicable statutes governing the creation of public roads”).
¶88 For this reason, the fact that Madison County’s attorneys signed the Pretrial Order stipulating that Seyler Lane is a “county road,” Concurrence, ¶ 75 n. 1, is not sufficient to establish that Seyler Lane is, as a matter of law and fact, a county road. A county’s intent to establish a county road must be expressed through its board of commissioners. Pedersen, ¶ 20. Likewise, the fact that Madison County “has assumed jurisdiction of Seyler Bridge,” Concurrence, ¶ 79 n. 3, does not transform Seyler Lane into a county road. In fact, Madison County asserted in the District Court that its right to maintain Seyler Lane and Seyler Bridge arose from a prescriptive easement separate from the general public’s prescriptive easement to travel on the roadway. In its post-trial Proposed Conclusions of Law, Madison County proposed that “Madison County and the public have gained a prescriptive easement to travel on the paved portion of Seyler Lane,” but that “Madison County has gained a prescriptive easement to repair, replace and maintain the paved portion of Seyler Lane” and that “Madison County has also gained a prescriptive easement to maintain areas beyond the travelled surface and adjacent subsurface” (emphases added). These separate prescriptive easements for maintenance would have been unnecessary if the County believed-as the Court and the Concurrence mistakenly suggest-that Seyler Lane is a county road governed by county road statutes. See § 7-14-2107, MCA (when the county commissioners acquire property for county roads, the public gains “the right-of-way and the incidents necessary to enjoying and maintaining it” (emphasis added)). Significantly, Madison County did not cite this statute in its Proposed Conclusions of Law as authority to maintain Seyler Lane.
¶89 A reference to “county road” requires application of statutory provisions, while a reference to “prescription” invokes a century of common law jurisprudence governing the creation, width, and scope of prescriptive easements. The parties’ reference to “a county road right-of-way,” while simultaneously stating that it was “established by prescriptive use,” is legally inconsistent and thus hinders our ability to provide a sound decision. The Court’s failure to properly address this distinction will not only provide confusing precedent, but will *311 ultimately prove difficult for the District Court to apply on remand.[4]
¶90 The Concurrence asserts “we have held that a county road may be declared based upon prescriptive use,” citing Swandal Ranch Co. v. Hunt, 276 Mont. 229, 233, 915 P.2d 840, 843 (1996), in support of this assertion. Concurrence, ¶ 80. In Swandal Ranch, we specifically noted that we were not considering the creation of a county road through statutory procedures, but were instead addressing Park County’s claim that it “had established a public easement through prescriptive use” over Wallrock Road. 276 Mont. at 231, 234, 915 P.2d at 842, 843 (emphasis added). As the Concurrence recognizes, “ ‘a public easement is not the equivalent of a county road.’ ” Concurrence, ¶ 79 (quoting Pedersen, ¶ 23). Although we referred to Wallrock Road at times as a “county road,” we did so primarily in the context of acknowledging that the Park County Commissioners’ attempt to declare a county road in October 1950 had been “legally inadequate [under] ... the statutory process.” Swandal Ranch, 276 Mont, at 233-34, 915 P.2d at 843. The specific issue addressed in our opinion was “whether use of the road was permissive or adverse.” See Swandal Ranch, 276 Mont, at 232-36, 915 P.2d at 843-45. Contrary to the Concurrence’s suggestion, there is no indication that we considered whether prescriptive use could establish a “county road,” as distinguished from a “public easement,” under the statutes governing the creation of county roads. Moreover, such a holding would have been inconsistent with the fact that “county roads cannot be created without the county’s intent, expressed through its board of commissioners, to do so.” Pedersen, ¶¶ 20-23.
*312 B. “County Road” Statutes are Inapplicable
¶91 In spite of the parties’ imprecision in referring to Seyler Lane as “a county road right-of-way that was established by prescriptive use,” the Court and the Concurrence nevertheless treat Seyler Lane as though it is a county road whose width is determined by certain statutes. Citing §§ 7-14-2107(3) and 60-1-103(2), MCA, the Court observes that “[t]he width of a county road or bridge acquired by prescription must be sufficient to encompass the incidents necessary to enjoying, supporting and maintaining the roadway.” Opinion, ¶ 30; see also Opinion, ¶¶ 24, 29, 38. The Concurrence also contends that these two statutes “inform the determination of the Seyler Bridge’s width.” Concurrence, ¶ 76.1 believe this approach is mistaken for three reasons.
¶92 As an initial matter, there is no indication in the record that the parties believed the width of the public right-of-way over Seyler Lane and Seyler Bridge should be determined by the Title 7 and Title 60 statutes on which the Court and the Concurrence rely. That approach is of the Court’s and the Concurrence’s own devising. As far back as the July 2008 hearing on the cross-motions for summary judgment, and in more recent District Court filings such as the Pretrial Order, the parties referred to Seyler Lane indiscriminately as a “public highway by prescription,” a “public prescriptive road,” a “public prescriptive right-of-way,” and a “county road.”[5] The parties did not attribute the same meaning to the term “county road” as the Court and the Concurrence have. Instead, PLAA and Kennedy correctly recognized that the right-of-way’s width is governed by common law principles (which I discuss in the next section below).
¶93 Second, the Court and the Concurrence fail to cite any statutory basis for applying Title 7 and Title 60 statutes to determine the width of a public road established by prescription. Significantly, § 70-17-106, MCA, contradicts this approach. It states that “[t]he extent of a servitude is determined by [1] the terms of the grant or [2] the nature of the enjoyment by which it was acquired.” Section 70-17-106, MCA. “[T]he terms of the grant” applies in the case of an express easement, *313 while “the nature of the enjoyment by which it was acquired” applies in the case of a prescriptive easement. Nothing in this statute indicates that the width of a prescriptive public road is determined by Title 7 or Title 60 statutes. Rather, consistent with common law principles, § 70-17-106, MCA, recognizes that prescriptive easements are determined by use.
¶94 Third, the Court’s approach is also contrary to precedent. In State v. Portmann, 149 Mont. 91, 423 P.2d 56 (1967), we specifically addressed whether a statute providing that “[t]he width of all public highways ... must be sixty feet” (now codified, as amended, at § 7-14-2112(1), MCA) applied to extend the width of a public road acquired by prescription. We held that applying this statute to determine the width of such a road would be “inconsistent with the general rule that the user determines the nature and the extent of the easement or title acquired.” Portmann, 149 Mont, at 94,423 P.2d at 58. We reaffirmed that, to “give the fullest recognition to the traditional requirements of adverse possession,” the public “may obtain title by adverse possession of that only which it has occupied during the full statutory period.” Portmann, 149 Mont. at 95-96, 423 P.2d at 58 (internal quotation marks omitted). We concluded that the 60-foot-width statute “was intended by the Legislature to apply only to public roads which were laid out by the official act of the proper public officials and was never intended to apply to prescriptive easements.” Portmann, 149 Mont, at 96, 423 P.2d at 58. We further held that “the rights acquired by adverse use can never exceed the greatest use made of the land for the full prescriptive period.” Portmann, 149 Mont, at 96, 423 P.2d at 58. In so doing, we acknowledged authority from other jurisdictions — namely, State ex rel. Game, Forestation and Parks Commission v. Hull, 97 N.W.2d 535 (Neb. 1959) (the width of a highway acquired by prescription is determined as a question of fact by the character and extent of its use and may be more or less than the width of highways established by statute), and Mulch v. Nagle, 197 P. 421 (Cal. App. 1st Dist. 1921) (a road established through public use does not fall within the statutory minimum for public roads; the minimum width applies only to roads formally laid out by the proper public authorities).
¶95 Like the Title 7 statute addressed in Portmann, the two statutes invoked by the Court here were “never intended to apply to prescriptive easements.” 149 Mont, at 96, 423 P.2d at 58. Section 60-1-103(2), MCA, concerns “bridge[s] constructed by the department [of transportation]”; it says nothing about prescription. Section *314 7-14-2107(3), MCA, states that “[b]y taking or accepting interests in real property for county roads, the public acquires only the right-of-way and the incidents necessary to enjoying and maintaining it.” This provision, however, is part of a statute that concerns county roads established through the “petition” process. See § 7-14-2107(1), (2), MCA. The statute says nothing about what the public acquires through prescriptive use.
¶96 The Concurrence nevertheless posits that these statutes incorporate the principles reflected in caselaw. Concurrence, ¶ 77. While the statutes may appear to be consistent with common law principles, however, the Court and the Concurrence have construed them as authority for expanding the width of a prescriptive right-of-way, in violation of the longstanding rules that “the user determines the nature and the extent of the easement or title acquired” and “the public may obtain title by adverse possession of that only which it has occupied during the full statutory period.” Portmann, 149 Mont, at 94-95, 423 P.2d at 58 (internal quotation marks omitted). Section 7-14-2107(3), MCA, clearly is intended to limit the interest that the public acquires when a county condemns or contracts for a right-of-way to “only” the right-of-way and the incidents necessary to enjoying and maintaining it. The Court and the Concurrence twist this provision’s meaning by suggesting, first, that it applies to public highways created by prescription and, second, that it expands the width of a prescriptive public right-of-way.
¶97 I am aware of no precedent in this Court’s history-and neither the Court nor the Concurrence cites any-for using §§ 7-14-2107(3) and 60-1-103(2), MCA, to determine the width of a public road established by prescription. These statutes were not intended for that purpose, and the Court’s approach here is contrary to well-established precedents which hold that the width of a prescriptive public road is determined by actual “use” and “occupation.” Maynard v. Bara, 96 Mont. 302, 307, 30 P.2d 93, 95 (1934); Portmann, 149 Mont. at 95-96, 423 P.2d at 58. I would apply this law, and the common law rules discussed below, in determining the width of the Seyler Lane right-of-way.
C. Common Law Principles Dictating the Right-of-Way’s Width
¶98 A party seeking to establish a prescriptive public easement must show (by clear and convincing evidence) open, notorious, adverse, continuous, and uninterrupted use of the claimed easement for the full *315 statutory period.[6] Graham v. Mack, 216 Mont. 165, 172-73, 699 P.2d 590, 595 (1984); Wareing v. Schreckendgust, 280 Mont. 196, 204-06, 930 P.2d 37, 42-43 (1996); Heller v. Gremaux, 2002 MT 199, ¶ 12, 311 Mont. 178, 53 P.3d 1259. Additionally, the party must show that the public pursued a definite fixed course, without any deviation, for the full statutory period.[7] Pope v. Alexander, 36 Mont. 82, 89, 92 P. 203, 205 (1907); Peasley v. Trosper, 103 Mont. 401, 405-06, 64 P.2d 109, 110-11 (1936); Brannon v. Lewis & Clark Co., 143 Mont. 200, 203-04, 387 P.2d 706, 708-09 (1963); Swandal Ranch, 276 Mont. at 233, 915 P.2d at 843.
¶99 Here, the parties have stipulated that the foregoing elements have been met and that “the public has the right to use the paved portion of Seyler Bridge and its approaches on Seyler Lane for travel across Seyler Bridge over the Ruby River.” The question is what rights, if any, the public has outside the paved portion of Seyler Lane. In this regard, the parties argue fundamentally different theories as to the legal significance of the stipulated facts. In Kennedy’s view, the right-of-way to which the parties stipulated does not give the public any rights outside the paved portion of Seyler Lane. As such, Kennedy contends that PLAA must establish a separate prescriptive “footpath” leading from the pavement down to Ruby River; in other words, PLAA must prove, by clear and convincing evidence, that the public followed a definite, fixed course between the pavement and the water openly, notoriously, adversely, continuously, and uninterruptedly for the full prescriptive period. In PLAA’s view, however, the right-of-way to which the parties stipulated includes not only the paved portion of *316 Seyler Lane, but also “sufficient land” alongside the pavement for ditches, repairs, and other public uses-such as “accessing the Ruby River.” PLAA states that it “is not seeking to acquire a new prescriptive easement beyond the existing Seyler Lane right-of-way.” Rather, PLAA believes the stipulated right-of-way is wide enough to enable the public to reach the river.
¶100 In my view, PLAA’s theory-and this Court’s tacit adoption of it-is contrary to over a century of precedent governing prescriptive easements. Where the public claims a right-of-way founded on prescriptive use, this Court has been unequivocal that “[t]he occupancy or use by the public of one portion of the road does not avail it in its claim to another portion not occupied by it.... [T]he public may obtain title by adverse possession of that only which it has occupied during the full statutory period.” Maynard, 96 Mont, at 307, 30 P.2d at 95; accord State v. Auchard, 22 Mont. 14, 16, 55 P. 361, 362 (1898) (the right is “confined to the very way claimed and traveled during the period”).
¶ 101 Various out-of-state cases recognize that while the dimensions of a prescriptive public road are determined by the public’s actual use of the land in question as a roadway during the prescriptive period, the right-of-way necessarily includes an incidental right to use adjacent land to the extent reasonably necessary to support and maintain the traveled surface area, such as shoulders, slopes, and ditches. Semmerling v. Hajek, 630 N.E.2d 496, 501 (Ill. App. 2d Dist. 1994); Platt v. Ingham Co. Road Commn., 198 N.W.2d 893, 894 (Mich. App. 1972); Barfnecht v. Town Bd. of Hollywood Township, 232 N.W.2d 420, 423 (Minn. 1975); Campbell v. Covington Co., 137 So. 111, 112 (Miss. 1931); Teadtke v. Havranek, 777 N.W.2d 810, 820 (Neb. 2010); Nikiel v. City of Buffalo, 165 N.Y.S.2d 592, 597 (N.Y. Sup. Ct. 1957); Keidel v. Rask, 290 N.W.2d 255, 258 (N.D. 1980); McKenzie Co. v. Reichman, 2012 ND 20, ¶¶ 31-33, 812 N.W.2d 332; Yturria Town & Improvement Co. v. Hidalgo Co., 125 S.W.2d 1092, 1094 (Tex. App.-San Antonio 1939). However, contrary to the Court’s discussion (Opinion, ¶ 25), these cases do not hold that the maintenance and support area may also be used for public travel.
¶102 In fact, the Semmerling court rejected such an argument:
Here, there is... no evidence that the public used the grassy areas on either side of the road for road purposes. To the contrary, the evidence established that public use was limited to the paved portion of the road. The trial court certainly was not required to conclude in the absence of any other evidence that, just because *317 the Township mowed those areas, the prescriptive easement encompassed those areas.
630 N.E.2d at 501; accord Campbell, 137 So. at 112 (“The prescriptive right carries with it the beaten path and whatever is necessary to make the beaten path a usable highway, but this does not mean that the prescriptive right carries with it the right in the public to lay out and construct an extended and enlarged highway ... .”). By the same reasoning, the fact that Madison County maintains the areas alongside the paved portion of Seyler Lane does not mean that the public’s right of travel extends to those areas.
¶ 103 In Barfnecht, the court considered a statute which provided for the acquisition of highways by adverse public use. It stated that any road used and kept in repair for at least six years as a public highway is deemed dedicated to the public to the width of two rods (33 feet) on each side of the center line thereof. Barfnecht, 232 N.W.2d at 422. The plaintiffs argued that recognizing a prescriptive right-of-way greater in width than the area actually used by the public during the period of prescription would amount to an unconstitutional taking of private property. The court, however, construed the statute so as to avoid this result. The court observed that a prescriptive public easement
arises from the fact that [adverse public] use serves to give the owner notice that, if he means to dispute the rightfulness of the public use, he must assert his right within a statutory period by physical action or suit. The statute provides a statute of limitations, the running of which estops an owner from denying the existence of a public easement. Public use cannot be said to apply to lands not actually used. There is no reason that an owner should know that he is required to dispute the rightfulness of a nonexistent user. A property owner thus receives no notice as to a public claim on any property in excess of that which has actually been used.
Barfnecht, 232 N.W.2d at 423 (footnote and paragraph break omitted). The court held, therefore, that “[p]rivately owned land cannot become public road by adverse use beyond the portion so used merely by a statutory pronouncement to that effect .’’Barfnecht, 232 N.W.2d at 423. Likewise, here, Title 7 and Title 60 statutes cannot be used to expand the Seyler Lane right-of-way beyond the width to which the parties stipulated-“the paved portion” of the road-without implicating an unconstitutional taking of private property.
¶ 104 As for the other out-of-state cases, Teadtke and Yturria did not involve issues of maintenance and support in relation to an easement’s *318 width. Nikiel was based on a New York statute which provided that the width of prescriptive public highways is at least three rods (49.5 feet). 165 N.Y.S.2d at 596-97. This is contrary to Montana law, which states that the width of prescriptive public roads is limited to the area actually occupied and used during the statutory- period. Portmann, 149 Mont. at 95-96, 423 P.2d at 58. The Platt decision is consistent with this principle; the court there held that “though the width of a prescriptive easement in a public highway includes shoulders and ditches needed and actually used, it does not include the allowance of a width for shoulders and ditches not used but needed”-the point being that the easement’s width is determined by actual use. 198 N.W.2d at 894 (emphases added). Lastly, Keidel distinguished the “actual traveled surface area of the roadway” from the “adjacent land which is needed for the prescription to be maintained as a public road.” 290 N.W.2d at 258; accord McKenzie, ¶ 31. Neither Keidel nor McKenzie held that the adjacent land may be used as an expanded travel area.
¶105 My disagreement with the Court, therefore, is with the notion that the adjacent land needed to support and maintain a prescriptive public road may be used by the public for other purposes, such as traversing down to a stream. Admittedly, the Court’s Opinion is inconsistent in this regard. On one hand, we are told that “[rlecreational use ... may be considered in determining the width of the public road right-of-way.” Opinion, ¶ 36. The Court thus implicitly allows recreational use to determine the width of a right-of-way beyond that necessary for maintenance. On the other hand, however, we are told that “[a]ny recreational uses by the public beyond the width necessary for the construction, maintenance and repair of the roadway and the bridge would have to be established through clear and convincing evidence for the requisite statutory period.” Opinion, ¶ 38. Contrary to the language in ¶ 36, the language in ¶ 38 indicates that any recreational use beyond the width necessary for maintenance will have to be proved as a separate prescriptive easement. How the parties and the District Court are to analyze recreational use on remand is, therefore, ambiguous.
¶ 106 Nevertheless, to the extent the Court is permitting recreational use to expand the width of the stipulated right-of-way beyond the paved surface of Seyler Lane, I strongly disagree. The Montana and out-of-state precedents cited above are clear, at least in my view, that the width of a prescriptive public road is defined by the definite, fixed course that the public actually used during the period of prescription. As we stated in Portmann, to “give the fullest recognition to the *319 traditional requirements of adverse possession,” the public “may obtain title by adverse possession of that only which it has occupied during the full statutory period.” 149 Mont, at 95-96, 423 P.2d at 58 (internal quotation marks omitted). Here, pursuant to the parties’ stipulations, the occupied area consists only of “the paved portion” of Seyler Lane. Of course, as explained, a prescriptive road includes an incidental right to use adjacent land-such as shoulders, slopes, and ditches-that is reasonably necessary to support and maintain the roadway. Obviously, without such land, the road would become unusable as a public right-of-way. But I am aware of no authority-and neither PLAA nor the Court nor the Concurrence cites any-which holds that the land needed to support and maintain the beaten path may be transformed into part of the beaten path. That is the crux of my disagreement with our Opinion. In my view, the Court is fundamentally mistaken in holding that the land alongside the beaten path may be used for purposes in addition to simple maintenance and support.
¶107 My conclusion is supported not only by the aforementioned precedents, but also by various statutes which limit where particular public uses may occur within a single right-of-way. Although a public right-of-way may be wide enough to encompass several uses-such as vehicular travel, pedestrian travel, bicycle travel, and maintenance work-this does not mean that all of these uses may occur everywhere within the right-of-way. The public’s right to use one area for a specific purpose does not give it the right to use that area for an entirely different purpose. Vehicular travel, for example, is confined to the roadway. See § 61-8-321(1), MCA (requiring vehicles to be operated on the right half of the roadway); § 61-1-101(66), MCA (defining “roadway” as “that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder”). Pedestrians are prohibited from walking on the roadway if a sidewalk is available, and are otherwise required to walk “on the shoulder, as far as practicable from the edge of the roadway.” Section 61-8-506, MCA. Similar restrictions exist with regard to bicyclists, § 61-8-605, MCA, and snowmobiles, § 23-2-631, MCA.
¶108 The cases the Court cites at ¶ 24 of the Opinion do not support the conclusion that maintenance work by Madison County employees in the area along the paved portion of Seyler Lane gives the public the right to use that same area for other, nonmaintenance purposes. In McClurg v. Flathead County Commissioners, 188 Mont. 20, 24, 610 P.2d 1153, 1156 (1980), Rasmussen v. Fowler, 245 Mont. 308, 312, 800 P.2d 1053, 1056 (1990), Swandal Ranch, 276 Mont. at 234-36, 915 P.2d *320 at 844-45, Hitshew v. Butte/Silver Bow County, 1999 MT 26, ¶ 18, 293 Mont. 212, 974 P.2d 650, and Public Lands Access Assn. v. Jones, 2004 MT 394, ¶ 33, 325 Mont. 236, 104 P.3d 496, we held that evidence of maintenance by local authorities supports a finding of adversity. We were concerned in these cases with whether a prescriptive right-of-way had been proved, not with how wide it was. As for Smith v. Russell, 2003 MT 326, 318 Mont. 336, 80 P.3d 431, this case did not involve a road established by prescription.
¶109 In holding that there is a “single, unified, public road right-of-way,” any portion of which may be used by the public for travel, Opinion, f ¶ 32, 52, the Court disregards long and well-established precedent recognizing that the right to use adjacent land for support and maintenance of a prescriptive public road is incidental to the right to travel on that road. While the Court consumes a large portion of today’s Opinion faulting the District Court’s characterization of this right as a “secondary easement,”[8] Opinion, ¶¶ 18-32, the fact remains that, whatever the right is called, it is incidental to the right of travel on the roadway and it is limited to the purpose for which it exists: maintenance and support. This principle is simply an application of the maxim that “ ‘[w]hen an easement or other property right is created, every right necessary for its enjoyment is included by implication.’ ” Mattson v. Mont. Power Co., 2009 MT 286, ¶ 37, 352 Mont. 212, 215 P.3d 675 (quoting Sullivan v. Donohoe, 191 N.E. 364, 365 (Mass. 1934)); see also Laden v. Atkeson, 112 Mont. 302, 305-06, 116 P.2d 881, 883-84 (1941) (the right to enter upon the servient tenement for the purpose of repairing an easement is “ ‘a mere incident of the easement’ ”). The incidental right of maintenance and support is to be exercised only when necessary and in such a manner as not to needlessly increase the burden upon the servient tenement. Laden, 112 Mont. at 306, 116 P.2d at 884; Shammel v. Vogl, 144 Mont. 354, 365-66, 396 P.2d 103, 109 (1964); O’Connor v. Brodie, 153 Mont. 129, 140, 454 P.2d 920, 926 (1969); Sharon v. Hayden, 246 Mont. 186, 189-90, 803 P.2d 1083, 1086 (1990); Kephart v. Portmann, 259 Mont. 232, 238, 855 P.2d 120, 124 (1993); Engel v. Gampp, 2000 MT 17, ¶ 43, 298 Mont. 116, 993 P.2d 701; Musselshell Ranch Co. v. Seidel-Joukova, 2011 MT 217, ¶ 18, 362 Mont. 1, 261 P.3d 570.
¶110 The Court attempts to distinguish these cases on the ground *321 that they involved private easements and not “a county road acquired by prescriptive use.” Opinion, ¶ 24. The Court, mistakenly, construes provisions within Title 7 and Title 60 to support this distinction. The law of prescription, however, is governed by this Court’s precedents. See Swandal Ranch, 276 Mont. at 233, 915 P.2d at 843 (“The elements of prescriptive easement have been defined through case law.”). The only distinction our cases have made between public and private prescriptive easements is the element of exclusivity, which is not required to establish a public prescriptive easement.[9] Heller v. Gremaux, 2002 MT 199, ¶ 12, 311 Mont. 178, 53 P.3d 1259. Kennedy does not deny that Madison County may access his property to maintain and support the Seyler Lane right-of-way. At issue here is whether common law principles of prescription permit the width of a prescriptive easement, whether private or public, to be expanded beyond the area that was used and occupied during the prescriptive period, such that the area alongside the original traveled way may also be used for travel. Under our precedents, the clear answer to this question is no. Maynard, 96 Mont, at 307, 30 P.2d at 95 (“The occupancy or use by the public of one portion of the road does not avail it in its claim to another portion not occupied by it.”); Auchard, 22 Mont, at 16, 55 P. at 362 (the prescriptive right is “confined to the very way claimed and traveled during the period”). The out-of-state cases discussed above are in accord. As Kennedy points out, “if the area used for maintenance could be transformed into a new traveled way, then the easement could be expanded forever simply by paving over that area, which would create a right to more maintenance, ad infinitum” Likewise, the District Court observed in its Conclusions of Law that the County’s “right to use maintenance areas cannot be transformed into a new traveled way. The travel easement could be expanded forever simply by paving the areas used for maintenance which could create a right to use yet more land for lateral and subjacent support. Such a result would be impossible to square with Portmann .... It also defies common sense.”
¶111 Public prescriptive easements are founded on the definite, *322 fixed course established during the prescriptive period. There is an incidental right to use adjacent land as support for the traveled way, but there is no authority for our holding that the land used for support and maintenance may also be used by the general public as a supplemental area of travel. In my view, we are misapplying statutory provisions and prescriptive easement law in order to facilitate public access to Ruby River. Stream access laws are for the Legislature to consider and design. House Bill 190, passed by the Legislature in 2009, resulted in a new statute that authorizes any person to gain access to surface waters for recreational use by using (a) a public bridge, its right-of-way, and its abutments, and (b) a county road right-of-way. Section 23-2-312(1), MCA. Other legislation permits fencing within the right-of-way for livestock control or property management, as long as the fencing provides for public passage to surface waters. Sections 7-14-2134(4), 23-2-313(1), MCA. Importantly, this legislation expressly excludes a certain category of public roads from its application: those established through prescriptive use. Section 23-2-312(3), MCA. Our disregard of precedent-justified by a distinction artificially drawn, for the first time, today between private and public easements-upsets the balance achieved by the 2009 Legislature between recreationists and landowners.
D. Remand is Unnecessary
¶112 Lastly, I do not believe it is necessary to remand this case for a determination of the Seyler Lane right-of-way’s width. Pursuant to the parties’ stipulation, the prescriptive public road consists of the paved portion of Seyler Lane and Seyler Bridge, which varies between 20 and 24 feet in width. PLAA has failed to establish that the public has a right to travel anywhere off the paved portion of the road and bridge. While the prescriptive road includes an incidental right to use any adjacent land that is reasonably necessary to maintain and support the traveled surface area, the width of that maintenance and support area is not a question presented in this lawsuit. Kennedy does not dispute that Madison County may access his property to maintain and support the roadway, and Kennedy does not claim that Madison County has exceeded this right. Thus, in my view, there is no need to remand for a determination of the width of the incidental right of maintenance and support. What PLAA wants in this lawsuit is to obtain recognition of a right in the general public to travel over the adjacent land to get to the river. PLAA is clear that it is “not seeking to acquire a new prescriptive easement beyond the existing Seyler Lane right-of-way.” Rather, PLAA contends that the right to access the *323 river is encompassed within the right-of-way to which the parties stipulated. PLAA has failed to establish any legal basis for such a right, however. I accordingly would affirm the District Court’s judgment as to Seyler Lane and Seyler Bridge.
II. Access at Lewis Lane and Lewis Bridge
¶113 Lewis Lane and Lewis Bridge are also on Kennedy’s land. In 1910, Kennedy’s predecessor dedicated Lewis Lane to Madison County with the following language:
A strip of land thirty feet wide on each side of the center of the County road, as at present laid out, running across the S.E.1/4 of Section 23, in Township 4 South of Range 6 West M.P.M. It is intended to convey by this deed a right of way sixty feet wide and running entirely through said S.E.1/4 of Section 23, for a County road.
The District Court concluded that the public could use this 60-foot-wide right-of-way to reach Ruby River. The court noted that Lewis Bridge is less than 60 feet wide, which leaves room alongside the bridge for the public to walk down to the river and still be within the physical boundaries of the 60-foot-wide easement.
¶114 Kennedy contends that the District Court erred. He argues that the 1910 deed does not express any intent to authorize access to the river for public recreation.[10] This presents a question of deed interpretation. In Bolinger v. City of Bozeman, 158 Mont. 507, 493 P.2d 1062 (1972), we agreed with the principle that
[wjhether or not a particular use amounts to a diversion from that for which the dedication was made depends on the circumstances of the dedication and the intention of the party making it. It has been held that such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. In other words, the dedicator is presumed to have intended the property to be used in such way by the public as will be most convenient *324 and comfortable and according to not only the properties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions.
158 Mont, at 521, 493 P.2d at 1069 (emphasis and internal quotation marks omitted).
¶115 Here, Kennedy’s predecessor dedicated Lewis Lane without any explicit qualifications or limitations on the use of the road: “It is intended to convey by this deed a right of way sixty feet wide and running entirely through said S.E. 1/4 of Section 23, for a County road.” Kennedy nevertheless contends that, during the period when his predecessor made this dedication, the public did not have the right to use nonnavigable streams-such as Ruby River-for recreational purposes. See Herrin v. Sutherland, 74 Mont. 587, 596-97, 241 P. 328, 331 (1925). As we stated in Bolinger, however, the dedicator is presumed to have intended the property to be used in such way by the public as will be most convenient and comfortable and according to not only the properties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions. 158 Mont, at 521, 493 P.2d at 1069. In this regard, the 2009 Legislature clarified that a person may gain access to surface waters for recreational use by using (a) a public bridge, its right-of-way, and its abutments, and (b) a county road right-of-way. Section 23-2-312(1), MCA. The unqualified language of the 1910 deed is consistent with a dedication for such use.
III. Kennedy’s Takings Argument
¶116 As an alternative to his arguments concerning the public rights-of-way over Seyler Lane and Lewis Lane, Kennedy argues that the District Court’s and this Court’s recognition of the public’s right to engage in recreational use of Ruby River as it flows through his land amounts to an unconstitutional taking of his property. His theory, which is premised on his ownership of the bed of Ruby River, appears to be that if the public has no right to use Ruby River in the first place, then the public has no need to get there by crossing his land alongside Seyler Lane and Lewis Lane.
¶ 117 In this regard, Kennedy asserts that a landowner has the right to control the space above his land. He cites a number of out-of-state cases for this principle, including Illinois Central Railroad Co. v. Illinois, 146 U.S. 387, 452, 13 S. Ct. 110, 118 (1892) (title to the lands under the navigable waters of Lake Michigan “necessarily carries with it control over the waters above them”); U.S. v. Causby, 328 U.S. 256, 264, 66 S. Ct. 1062, 1067 (1946) (“[t]he landowner owns at least as *325 much of the space above the ground as he can occupy or use in connection with the land”); Kaiser Aetna v. U.S., 444 U.S. 164, 100 S. Ct. 383 (1979) (owner of private pond had right to exclude the public from boating on the pond); People v. Emmert, 597 P.2d 1025, 1027 (Colo. 1979) (“ownership of the bed of a non-navigable stream vests in the owner the exclusive right of control of everything above the stream bed”); and Butler v. Frontier Telephone Co., 79 N.E. 716, 718 (N.Y. 1906) (“space above land is real estate the same as the land itself’). He also cites our 1925 decision in Herrin, where we stated: “[I]t is held uniformly that the public have no right to fish in a nonnavigable body of water, the bed of which is owned privately.” 74 Mont, at 596-97,241 P. at 331.
¶ 118 Kennedy argues that our 1984 decisions in Montana Coalition for Stream Access, Inc. v. Curran, 210 Mont. 38, 682 P.2d 163 (1984), and Montana Coalition for Stream Access, Inc. v. Hildreth, 211 Mont. 29, 684 P.2d 1088 (1984), effectively overruled Herrin — a point that the State of Montana, which has intervened in this appeal, concedes-and thereby divested landowners of a valuable property right, namely, the right to exclude the public from the waters above privately owned streambeds.[11] In Curran, the Court held that a landowner has no right to control the use of the surface waters of a stream flowing through his property to the exclusion of the public, except to the extent of his prior appropriation of part of the water for irrigation purposes. 210 Mont, at 52, 682 P.2d at 170. The Court further held that “any surface waters that are capable of recreational use may be so used by the public without regard to streambed ownership or navigability for nonrecreational purposes.” Curran, 210 Mont, at 53, 682 P.2d at 171. The Court supplemented this holding in Hildreth to include “the bed and banks up to the ordinary high water mark.” 211 Mont, at 35-36, 684 P.2d at 1091. The Legislature codified these holdings in 1985. See §§ 23-2-301(12), -302(1), MCA.
¶119 Citing Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection, 560 U.S. 702, 130 S. Ct. 2592 (2010), Kennedy contends that our decisions in Curran and Hildreth *326 effected an unconstitutional judicial taking of property without just compensation. Citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S. Ct. 3164 (1982), he contends that the enactment of statutes based on Curran and Hildreth amounted to an unconstitutional legislative taking of property. The State responds that these “claims” are barred by the statute of limitations. The State cites § 27-2-207, MCA, which prescribes a limitation on “the commencement of an action” for injury to property. Yet, Kennedy has not commenced an action for injury to property. He has no cross-claims or counterclaims pending. He asserts no claims for damages due to a taking or inverse condemnation of property. He states that he is asserting his takings argument as a defense to PLAA’s claim that the public has the right to cross his land in order to access and use Ruby River. As we have recognized, “statutes of limitations ... [are] limitations on actions only and not of defense.” Hagerty v. Hall, 135 Mont. 276, 280, 340 P.2d 147, 149 (1959). Thus, I believe the State’s procedural argument is misplaced.
¶120 Nevertheless, the judicial and legislative takings alleged by Kennedy occurred in 1984 and 1985, when the right of landowners to exclude the public from the waters over privately owned streambeds, recognized 59 years earlier in Herrin, was changed by our decisions in Curran and Hildreth and the ensuing statutes enacted by the Legislature. Kennedy did not own the Ruby River streambed in 1984 or 1985, and thus nothing was taken from him. When he purchased his property in 1993, Curran and Hildreth were the law of this State, and he thus acquired no right to exclude the public from using Ruby River during anytime when he has owned his property. Simply acknowledging, in the context of the present lawsuit, the rights held by the public under Curran and Hildreth does not effect any taking of Kennedy’s property.
CONCLUSION
¶121 “[Significant controversy has existed related to public access to streams and rivers from county road and bridge rights-of-way.” Laws of Montana, 2009, ch. 201, preamble to House Bill 190. In 2007 and 2008, “a group of stakeholders met to address the controversy and agreed in principle that a legislative solution was preferable.” Laws of Montana, 2009, ch. 201, preamble to House Bill 190. That legislative solution took the form of House Bill 190, which the Legislature passed in 2009. Nearly every member of the 2009 Legislature voted in favor of the bill; the final vote was 96 to 3 in the House and 48 to 2 in the Senate. The bill struck a balance, allowing the public to gain access to *327 surface waters for recreational use at public bridges and county road rights-of-way, while allowing landowners to run their fences up to the edge of the bridge as long as the fences did not prevent public passage to surface waters. The bill expressly excluded a certain category of public roads from its application: those established by prescriptive use.
¶122 With today’s decision, this Court nullifies the exclusion of prescriptive easements from the 2009 legislation and alters the balance struck by the Legislature. We do so by ignoring a century of precedent recognizing that the public may obtain a prescriptive easement over only the land which the public adversely possessed-confined to the way actually occupied during the prescriptive period-and that the incidental right of support and maintenance extends to only the adjacent land that is reasonably necessary for these purposes and must be exercised in such a way as not to needlessly increase the burden on the servient estate. The Court effectively grants a public prescriptive easement where the Legislature has determined none should exist. I believe the Court’s decision lacks any support in precedent and embroils this Court in a controversy that we are not properly suited to resolve. I would apply our well-settled principles of prescriptive easements and hold that PLAA has failed to establish a public right of passage from Seyler Lane to Ruby River.
¶123 I dissent from the Court’s decision to the contrary.

 As to Issue Four, the Court is remanding this case for further proceedings on the width of the Seyler Lane right-of-way. As the Court acknowledges, the District Court “found that the specific surveys PLAA presented did not provide information on the dimensions of the Seyler Lane right-of-way.” Opinion, ¶ 54. The Court then states, however, that PLAA is not precluded “from presenting to the [District Court] on remand any COS that provide information regarding the dimensions of the right-of-way.” Opinion, ¶ 55. To the extent the Court is implying here that PLAA’s surveys may somehow be relevant, I believe the District Court has considered this issue already and that the District Court’s evidentiary determinations were appropriate. PLAA has not shown that the District Court abused its discretion when deciding the evidentiary value of the surveys, and I thus would affirm the District Court’s rulings under Issue Four.

 Contrary to statements by the Court (Opinion, ¶ 18) and the Concurrence (Concurrence, ¶ 75), the District Court did not make a “finding,” based on evidence, that Seyler Lane is a county road. Because the stipulated facts were “admitted, agreed to be true, and require no proof’ (emphasis added), those facts were not issues at trial. Indeed, following a review of the trial transcript, it is clear that the parties were focused on other issues in the case. Correspondingly, in their respective Proposed Findings of Fact submitted post-trial, PLAA and Kennedy each distinguished between the “agreed facts” (the ones to which they had stipulated pretrial, as set forth in the Pretrial Order) and the “determined facts” (the ones found “based upon the evidence presented at trial”). The “county road” designation was a stipulated fact, not one “found” by the District Court as the Court and the Concurrence mistakenly identify.

 The one exception to this statement is recognition of a legal route by a district court pursuant to § 7-14-2622, MCA. Although the board of county commissioners must be notified in advance, the proceeding may be commenced in the district court by any “directly affected person.” Section 7-14-2622(1), MCA. Nevertheless, this sort of proceeding does not apply to “prescriptive easements.” Section 7-14-2622(5), MCA.

 1 note that the term “county roads established by prescriptive use” appears in two statutes enacted in 2009. See §§ 7-14-2622(5), 23-2-312(3), MCA. The origin of this terminology-which is inconsistent with the provisions just discussed-is not clear. It may have derived from a 2000 opinion of the Montana Attorney General, upon which House Bill 190 (2009) was based. See Laws of Montana, 2009, ch. 201, preamble; Mont. Atty. Gen. Op. 48-13,2000 Mont. AG LEXIS 6 (May 26, 2000) (providing an opinion on access to Ruby River at three bridge crossings, including Seyler Bridge, and referring to “county roads and bridges created by prescription”). The terminology also could have derived from the District Court’s September 30, 2008 order in the present litigation, which refers to the roads at issue, including Seyler Lane, as “county roads.” (PLAA states in its opening brief on appeal that the District Court’s 2008 order was “essentially codified” in §§ 7-14-2134(4), 23-2-312, and 23-2-313, MCA.) Regardless of its origin, however, “county road” means a public highway established by a county in accordance with statutory formalities. Pedersen, ¶ 20; §§ 7-14-2101, 60-1-103(7), 60-1-201(3), MCA.

 It should be noted that “highway” and “road” are not the same as “county road.” “Highway” and “road” are “general terms denoting a public way for purposes of vehicular travel and include the entire area within the right-of-way.” Section 60-1-103(19), MCA. “County road” means “any public highway opened, established, constructed, maintained, abandoned, or discontinued by a county in accordance with Title 7, chapter 14.” Section 60-1-103(7), MCA.

 The statutory period was five years prior to 1893, ten years from 1893 to 1953, and five years since 1953. Yellowstone River, LLC v. Meriwether Land Fund I, LLC, 2011 MT 263, ¶ 23 n. 9, 362 Mont. 273, 264 P.3d 1065.

 I agree with PLAA that the District Court was incorrect in stating that “[Recreational use is insufficient to establish a prescriptive easement.” In Public Lands Access Assn. v. Boone and Crockett Club Foundation, Inc., 259 Mont. 279, 856 P.2d 525 (1993)-the primary authority cited by the District Court on this issue-we did not hold that public use is insufficient if it is recreational; rather, we held that public use is insufficient if it is occasional. 259 Mont, at 285, 856 P.2d at 528-29. There is no reason why traveling a definite, fixed course over private land in an open, notorious, adverse, continuous, and uninterrupted manner for the full statutory period should not ripen into a prescriptive right-of-way merely because the people who do so are recreationists. Nevertheless, for reasons discussed below, I believe the District Court ultimately reached the correct result.

 As noted, Madison County essentially claimed a “secondary easement” in the District Court proceedings. Supra ¶ 88.

 The Court today adopts another distinction: that, unlike private prescriptive easements, the scope of uses within public prescriptive easements is broad enough to include reasonably foreseeable public uses. Opinion, ¶¶ 46-51. Although I do not disagree with this holding, I find it irrelevant because the parties here do not dispute the public uses that may occur within the stipulated right-of-way.

 The Court faults Kennedy for “failting] to demonstrate that his predecessor did not intend to authorize access to the Ruby River from Lewis Lane for public fishing, wading, hunting or other uses.” Opinion, ¶ 60. However, under our precedent, it is not Kennedy’s burden to show that his predecessor did not intend to grant such access. Rather, the party claiming the easement (PLAA) has the burden to prove the facts necessary to establish the easement, i.e., that Kennedy’s predecessor did intend to authorize public access to Ruby River for recreation. Richter v. Rose, 1998 MT 165, ¶ 35, 289 Mont. 379, 962 P.2d 583.

 See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 673, 119 S. Ct. 2219, 2224 (1999) (“The hallmark of a protected property interest is the right to exclude others.”); Kafka v. Mont. Dept. of Fish, Wildlife & Parks, 2008 MT 460, ¶ 51, 348 Mont. 80, 201 P.3d 8 (“the most significant of all the indicia [of property is]... the right to exclude”).